**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NEDA ANSARI, MALCOLM BROOKS, VY LE, ANNABELLE PULVER, USRA SALIM, and DANA WHITTEN, *on behalf of themselves and all others similarly situated*,<br><br>                              Plaintiffs,<br><br>v.<br><br>JOE & THE JUICE NEW YORK LLC and JOE & THE JUICE US HOLDINGS, INC.<br><br>                              Defendant. | **Case No. 1:25-cv-4643**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Neda Ansari, Malcolm Brooks, Vy Le, Annabelle Pulver, Usra Salim, and Dana Whitten (collectively, "Plaintiffs") bring this class action lawsuit individually and on behalf of all others similarly situated against Defendants Joe & The Juice New York LLC and Joe & The Juice US Holdings, Inc. (collectively, "Joe & The Juice" or "Defendants"), and alleges, upon information and good faith belief, as follows:

1.     Founded in Copenhagen in 2002 by CEO Kaspar Basse, Joe and the Juice has quickly become one of fastest growing fast-food chains in the world, with over 65 locations throughout the United States and 385 stores globally.

2.     Unlike other fast-food chains, Joe and the Juice intentionally "leverag[ed] . . . increasing customer need of convenience **and healthy living**," targeted customers looking for "**healthy lifestyles**," and claimed to offer "high-quality, natural, and organic ingredients" in its

1

"freshly prepared juices, shakes, coffee, and sandwiches."[1]

3.    Unlike other fast-food chains, Joe and the Juice has carefully and deliberately crafted its image as a lifestyle brand, with its CEO emphasizing on its website—in a public document on its website entitled "The Manifest"—that Defendants' "fundamental purpose" is to serve as a "contemporary educational platform" for "nutrition fanatics," and prepare them for a "*healthy life*."[2]

4.    To that end, Defendants promised "all people of our movement" that they are "vain about the quality [they] deliver," and "the positions [they] keep," and that at Joe and the Juice, "the value of money and accomplishment depends on how it's earned."[3]

5.    However, these were lies; **just like other fast-food chains**, Defendants hid their use of harmful, highly-processed canola oils in each one of their "healthy" juices (the "Products").

6.    Defendants represented – online, on their in-store menu, on food delivery apps (such as Grubhub, DoorDash, Uber Eats, Postmates, etc.), and in other advertising and marketing materials – that each Product contains "olive oil."

7.    To be labeled "olive oil," the product must be solely extracted from olives and not mixed with any other types of oils like seed, vegetable, or nut oils. The North American Olive Oil Association, products claiming to be "olive oil" cannot have other oils in their composition.[4]

---

[1] Press Release, Joe & the Juice Announces Strategic Growth Investment from General Atlantic (Oct. 12, 2016), https://www.generalatlantic.com/media-article/joe-juice-announces-strategic-growth-investment-general-atlantic/ (last visited Jan. 8, 2025).

[2] The Manifest, Joe & The Juice, https://www.joejuice.com/culture/the-manifest (last visited Jan. 8, 2025).

[3] *Id*.

[4] *See Olive Oil Quality, Olive Oil Purity v Quality*, Northan American Olive Oil Association,

8. Due to the relative quality, health benefits, and availability, olive oil is significantly more expensive than canola oil.

9. Olive oil is rich in antioxidants and anti-inflammatory compounds, contributing to cardiovascular health, among other health benefits.

10. However, Defendants intentionally failed to disclose that the "olive oil" used in their Products is actually 95% canola oil and only 5% olive oil.

11. This misrepresentation and omission are significant and according to the NAOOA, constitute "olive oil fraud." [5]

12. Canola oil's nutritional content and processing renders it likely to cause and/or contribute to inflammation and other adverse health outcomes. It is also common for consumers to have allergies or sensitives to seed oils such as canola oil.

13. Thus, Defendants' advertising and marketing campaign for the Products is false, deceptive, and misleading because it does not disclose use of canola oil in the Products.

14. Ingredients are unquestionably material to reasonable consumers—at least according to Joe & the Juice's Manifest—as they are relevant to both health and cost considerations.

15. Plaintiffs and those similarly situated (the "Class Members") could not have known about Defendants use of Canola Oil before purchasing the Products without extensive and expensive scientific testing, and thus, they justifiably relied on Defendants misrepresentations and omissions that the Products contained olive oil, and not canola oil, when purchasing the Products.

16. Conversely, Defendants knew and misrepresented the ingredients used to prepare

---

https://www.aboutoliveoil.org/olive-oil-purity-v-quality (last visited May 12, 2025)

[5] *Id.*

their Products. Defendants source the ingredients and manufacture the Products and have exclusive knowledge of the ingredients contained therein.

17.    Plaintiffs and Class Members thus paid a price premium for the Products based upon Defendants' marketing and advertising campaign, including Joe & The Juice's menus, and therefore they have suffered injury in the amount of the premium paid.

18.    Defendants' conduct violated and continues to violate, *inter alia*, common law, implied warranties, and New York General Business Law §§ 349 and 350. Accordingly, Plaintiffs bring this action against Defendants on behalf of themselves and Class Members nationwide who purchased the Products during the applicable statute of limitations period (the "Class Period").

## PARTIES

### PLAINTIFFS

19.    Plaintiff Neda Ansari is a consumer who, at all times material hereto, was a citizen of Washington, residing in Seattle, Washington. Plaintiff purchased the Products in California and Washington multiple times during the Class Period. Prior to purchasing the Products, Plaintiff read the Products' ingredients lists.

20.    Plaintiff Malcolm Brooks is a consumer who, at all times material hereto, was a citizen of Pennsylvania, residing in Pittsburgh, Pennsylvania. Plaintiff purchased the Products in Pennsylvania multiple times during the Class Period. Prior to purchasing the Products, Plaintiff read the Products' ingredients lists.

21.    Plaintiff Vy Le is a consumer who, at all times material hereto, was a citizen of California, residing in Los Angeles, California. Plaintiff purchased the Products in California multiple times during the Class Period. Prior to purchasing the Products, Plaintiff read the Products' ingredients lists.

22.     Plaintiff Annabelle Pulver is a consumer who, at all times material hereto, was a citizen of New York, residing in New York, New York. Plaintiff purchased the Products in New York City and Florida multiple times during the Class Period. Prior to purchasing the Products, Plaintiff read the Products' ingredients lists.

23.     Plaintiff Usra Salim is a consumer who, at all times material hereto, was a citizen of Illinois, residing in Addison, Illinois. Plaintiff purchased the Products in Illinois multiple times during the Class Period. Prior to purchasing the Products, Plaintiff read the Products' ingredients lists.

24.     Plaintiff Dana Whitten is a consumer who, at all times material hereto, was a citizen of Maryland, residing in Bethesda, Maryland. Plaintiff purchased the Products in Maryland multiple times during the Class Period. Prior to purchasing the Products, Plaintiff read the Products' ingredients lists.

25.     Plaintiffs purchased the Products in reliance on Defendants' representation that the Products contained only the ingredients set forth on Joe & The Juice's menus.

26.     Had Defendants disclosed that the Products contained canola oil, Plaintiffs would not have been willing to pay the same amount for the Products and/or would not have been willing to purchase the Products.

27.     Plaintiffs purchased and paid more for the Products than they would have had they known the truth about the Products. The Products Plaintiffs received were worth less than the Products for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendants' improper conduct.

**DEFENDANTS**

28.     Defendant Joe & The Juice New York LLC is a limited liability company formed under New York law. Its principal place of business is located at 110 Greene Street, Suite 702, New York, New York 10012. Its Managing Director Andreas Peter Dipo-Zimmermann and Vice President Valdemar Halbye are likewise located at 110 Greene Street, Suite 702, New York, New York 10012.

29.     Defendant Joe & The Juice US Holdings, Inc. is a corporation formed under Delaware law.  Its principal place of business is located at 110 Greene Street, Suite 702, New York, New York 10012.

30.     Within the United States, Defendants are authorized to do business in New York, California, Florida, Illinois, Maryland, Minnesota, Pennsylvania, Washington, and Washington, DC.

31.     Defendants design, market, and advertise the Products throughout the United States. Defendants created and/or authorized the false, misleading, and deceptive advertisements and descriptions for the Products.

32.     Defendants' false, misleading, and deceptive representations and omissions regarding the Products emanated out of its headquarters in New York, New York, and were uniform throughout the United States.  Defendants designed their false, misleading, and deceptive menus in New York, and selected the ingredients for the Products in New York, New York.

**<u>JURISDICTION & VENUE</u>**

33.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Defendants are citizens of New York; (3) Plaintiffs Ansari, Brooks, Le, Salim, and Whitten,

6

and, based upon information and belief, greater than two-thirds of class members are citizens of states other than New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

34.     This Court has personal jurisdiction over Defendants because Defendants are citizens of New York, conduct and transact business in the state of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

35.     Venue is proper because Plaintiff Pulver, Defendants, and many Class Members reside in the Southern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the Class Members' claims occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

36.     Over the past decade, consumers have become increasingly concerned about the effects of unhealthy ingredients in food products that they and their family members consume. Companies, such as Defendants, have capitalized on consumers' desire for healthy products, and indeed consumers are willing to pay, and have paid, a premium for such food products.

37.     Defendants purport to list all ingredients on their menus – including online, in apps, in-store, and in all advertisements and marketing materials.

38.     For example, Defendants' in-store and website menus state the ingredients in the Products as follow:

## 🥤 SIGNATURE JUICES


**Hydration Station**  `NEW`
Vita Coco Coconut Water, Lemon, Spinach, Ginger, Apple, Olive Oil, Ice
$12.50


**Feel Good**  `NEW`
Carrot, Turmeric, Ginger, Lemon, Apple, Olive Oil, Ice
$12.50


**JOEs Green Mile**  `IMPROVED`
Spinach, Kiwi, Avocado, Lemon, Apple, Ice
$12.50


**Green Shield**  `IMPROVED`
Kale, Ginger, Cucumber, Spinach, Apple, Olive Oil, Ice
$12.50


**JOEs Identity**  `ALLERGEN UPDATE`
Kale, Celery, Spinach, Lemon, Cucumber, Olive Oil, Ice
$12.50


**Herb Tonic**  `IMPROVED`
Turmeric, Ginger, Pineapple, Carrot, Black Pepper, Apple, Olive Oil, Ice
$12.50

##  JUICES


**Go Away DOC**
Carrot, Ginger, Apple, Olive Oil, Ice
$9.40


**Green Tonic**
Kale, Celery, Cucumber, Olive Oil, Ice
$9.40


**Green Sport**
Apple, Pineapple, Cucumber, Ice, Olive Oil
$9.40


**Prince of Green**
Pineapple, Lemon, Cucumber, Olive Oil, Ice
$9.40


**Pick Me Up**  `POPULAR`
Apple, Strawberries, Banana, Ice, Olive Oil
$9.40


**Iron Man**
Apple, Strawberries, Kiwi, Ice, Olive Oil
$9.40


**Stress Down**
Apple, Olive Oil, Strawberries, Ginger, Ice
$9.40

39.     Defendants' app menus likewise state the ingredients in the Products as follow:



 **JUICES**



**Go Away DOC**
Carrot, Ginger, Apple, Olive Oil, Ice
$9.40



**Green Tonic**
Kale, Celery, Cucumber, Olive Oil,
Ice
$9.40



**Green Sport**
Apple, Pineapple, Cucumber, Ice,
Olive Oil
$9.40



**Prince of Green**
Pineapple, Lemon, Cucumber, Olive
Oil, Ice
$9.40



**Pick Me Up**    POPULAR
Apple, Strawberries, Banana, Ice,
Olive Oil
$9.40



**Iron Man**
Apple, Strawberries, Kiwi, Ice, Olive
Oil
$9.40



**Stress Down**
Apple, Olive Oil, Strawberries,
Ginger, Ice
$9.40

9

40.     Defendants' menus disclose "olive oil" as an ingredient in 100% of its Products.

41.     Olive oil is made from pressed olives. It is rich in antioxidants and monounsaturated fats. Increased olive oil consumption is known to be beneficial for heart health and anti-inflammatory. Greater olive oil consumption is linked to a lower risk of diabetes 2, stroke, and heart disease risk factors, including LDL (bad) cholesterol and triglyceride levels

42.     Defendants' menus disclose canola oil as an ingredient in 0% of its Products.

43.     Canola oil is a seed oil derived from rapeseed. Canola processing generally involves heating, pressing, chemical extraction, and refining. Canola oil also undergoes bleaching and deodorizing, which give it a neutral color and odor. Canola oil has been linked with a heightened risk of developing metabolic syndrome. Studies associate canola oil with increased inflammation, a negative impact on memory, and lower blood levels of antioxidants.

44.     As a consequence of the relative quality, health benefits, and availability, olive oil is significantly more expensive than canola oil.

45.     Additionally, there is a difference in flavor between the two oils: olive is a bit fruitier and slightly peppery, while canola is considered relatively neutral.

46.     Despite its representations, 100% of the of Joe and the Juice's Products contain canola oil.

47.     And according to NAOOA standards, 0% of Defendants' Products contain olive oil.

48.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unhealthy substances or the ingredients represented, especially at the point of purchase.

49.     Therefore, consumers must and do rely on Defendants to truthfully and honestly

report what their Products contain on their menus. Indeed, testing for ingredients requires expensive and destructive scientific methods. Given the price of the Products, no reasonable consumer would engage in such testing before purchasing the Products.

50.     However, public reports recently revealed that Defendants' Products contain canola oil, despite representing that they contain olive oil.[6]

51.     Defendants purchased this 95% canola oil concoction, which is less expensive than 100% olive oil.

52.     Defendants purchased this 95% canola oil concoction to save money.

53.     Defendants marketed and served this 95% canola oil concoction to consumers as "olive oil."

54.     Defendants labeled the 95% canola oil concoction "olive oil" to leverage consumers' increasing need and desire for healthy living and target customers looking for healthy lifestyles.

55.     Defendants hid the contents of their 95% canola oil concoction from consumers.

56.     Defendants continued to purchase and serve this 95% canola oil concoction to consumers in all United States locations for years.

57.     Defendants had exclusive knowledge regarding the use of canola oil in the Products, and Plaintiffs and the Class Members could not have known about this risk.

58.     Consumers reasonably rely on the marketing and information on Defendants' menus in making purchasing decisions. By marketing the Products as containing olive oil, and not

---

[6] *See, e.g.*, Ljeonida Mulabazi, *'I'm 99% sure you don't know this': Customer catches Joe & the Juice lying about using 'olive oil' in juices*, Daily Dot (Dec. 23, 2024), https://www.dailydot.com/news/joe-and-the-juice-olive-oil/.

disclosing the significantly greater use of canola oil, Defendants mislead reasonable consumers.

59.    Defendants' concealment was material because people are understandably concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care.

60.    Consumers such as Plaintiffs and the Class Members are influenced by the ingredients in the products they buy.

61.    Defendants know that if they had not omitted that the Products contained 95% canola oil then Plaintiffs and the Class would not have paid a premium for the Products or purchased them at all.

62.    Plaintiffs and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

63.    Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

64.    In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for the Products. Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiffs and the Class Members would not have been willing to pay the same amount for the Products they purchased and/or Plaintiffs and the Class Members would not have been willing to purchase the Products at all.

65.    Plaintiffs and the Class Members each paid money for the Products; however, Plaintiffs and the Class Members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions. Plaintiffs and the Class Members purchased,

purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiffs and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

<u>**TOLLING**</u>

66.    Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiffs did not know (and had no way of knowing) that the Products contained canola oil because Defendants kept this information secret.

<u>**CLASS ACTION ALLEGATIONS**</u>

67.    Plaintiffs bring their claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Class (collectively "the Class"):

> All consumers who purchased the Products anywhere in the United States during the relevant statute of limitations.

68.    Additionally, or in the alternative, pursuant to Rules 23(a), 23(b)(2), or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and all members of the "New York Subclass," which shall initially be defined as:

> All consumers who purchased the Products in the State of New York at any time during the relevant statute of limitations.

Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

69.    The Class and New York Subclass are properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity,

commonality, typicality, and adequacy because:

70.    <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers in the Class and the New York Subclass who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

71.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

      a.  Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased their Products;

      b.  Whether the Products contain canola oil;

      c.  Whether Defendants breached the implied warranty of merchantability relating to the Products;

      d.  Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Products;

      e.  Whether Defendants' false and misleading statements concerning their Products were likely to deceive the public and

      f.  Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

72.    <u>Typicality</u>: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class and New York Subclass was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products and suffered the same injury. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

73.    <u>Adequacy</u>: Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the Class Members they seek to represent, they have a strong interest in vindicating their rights and the rights of the Class and New York Subclass, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

74.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class and New York Subclass. The Class and New York Subclass issues fully predominate over any individual issue because no inquiry into individual consumer conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

75.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive – if not totally impossible – to justify individual actions;

c.    When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiffs know of no difficulty to be encountered in the

management of this action that would preclude its maintenance as a
class action;

f.     This class action will assure uniformity of decisions among Class
       Members;

g.     The Class is readily definable and prosecution of this action as a
       class action will eliminate the possibility of repetitious litigation;

h.     Class Members' interests in individually controlling the prosecution
       of separate actions is outweighed by their interest in efficient
       resolution by single class action; and

i.     It would be desirable to concentrate in this single venue the litigation
       of all Class Members who were induced by Defendants' uniform
       false advertising to purchase their Products because they contain
       olive oil and not canola oil.

76.    Accordingly, this Class and New York Subclass are properly brought and should
be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to
Class Members predominate over any questions affecting only individual members, and because
a class action is superior to other available methods for fairly and efficiently adjudicating this
controversy.[7]

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
### (On Behalf of Plaintiffs and All Class Members)

77.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing
paragraphs as if fully set forth herein.

78.    Defendants are merchants and were at all relevant times involved in the
manufacturing, distributing, and/or selling of the Products.

---

[7]     Plaintiffs reserve the right to amend or modify the Class definition as this case progresses.

79.     The Products are considered a "good" under the relevant laws.

80.     UCC section 2-314 provides that for goods to be merchantable they must (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair or average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved.

81.     Defendants breached the implied warranty of merchantability because the Products contained canola oil. The Products are not expected to contain canola oil.

82.     Defendants have been provided sufficient notice of their breaches of implied warranties associated with the Product. Defendants were put on notice via correspondence sent by Plaintiffs' counsel. Defendants were put on constructive notice of their breaches through public reports, as alleged herein (and to which Defendants responded), and upon information and belief, through their own records.

83.     Plaintiffs and each of the members of the Class were injured because the Products contained canola oil, despite representations to the contrary. Defendants thereby breached the following state warranty laws:

a. Cal. Comm. Code § 2314;

b. D.C. Code § 28:2-314;

c. Fla. Stat. § 672.314;

d. 810 I.L.C.S. 5/2-314;

e. Md. Commercial Law Code Ann. § 2-314;

f. Minn. Stat. § 336.2-314;

g. N.Y. U.C.C. Law § 2-314;

h. 13 Pa. Rev. Stat. § 72-3140;

i. Wash. Rev. Code Ann. § 6A.2-314;

84.    As a direct and proximate result of Defendants' breach of the warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiffs, All Class Members, and the New York Subclass Members)**

85.    Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

86.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

87.    The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs, Class Members, and the New York Subclass Members seek monetary damages against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products in the future.

88.    Defendants misleadingly, inaccurately, and deceptively advertise and market the Products to consumers. By misrepresenting the true contents of the Products, Defendants' marketing and menus mislead a reasonable consumer.

89.    Defendants had exclusive knowledge of the ingredients in the Products.

90.    Defendants' misrepresentations and omissions were material because consumers are concerned with the safety of food that they purchase, and the ingredients therein.

91.    Defendants' improper consumer-oriented conduct – including Defendants'

misrepresentation and omissions regarding the ingredients in the Products – is misleading in a material way in that it, *inter alia*, induced Plaintiffs, Class Members, and the New York Subclass Members to purchase and pay a premium for Defendants' Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

92.     Plaintiffs, Class Members, and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that – contrary to Defendants' misrepresentations and omissions— contain canola oil. Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

93.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiffs, Class Members, and the New York Subclass Members have been damaged thereby.

94.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs, Class Members, and the New York Subclass Members are entitled to monetary damages, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, as well as interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs, All Class Members, and the New York Subclass Members)**

95.     Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

96.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is

hereby declared unlawful.

97.    N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

98.    Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent the existence of canola oil in the Products. By misrepresenting the true contents of the Products, Defendants' marketing and menus mislead a reasonable consumer.

99.    Defendants had exclusive knowledge of the ingredient in the Products.

100.    Defendants' misrepresentations and omissions were material because consumers are concerned with the health of food that they purchase and the ingredients therein.

101.    Plaintiffs and the New York Subclass Members have been injured inasmuch as they relied upon the menu and advertising and paid a premium for the Products which – contrary to Defendants' representation – do not disclose the existence of canola oil in the Products. Accordingly, Plaintiffs, Class Members, and the New York Subclass Members received less than what they bargained and/or paid for.

102.    Defendants' advertising and products' labeling induced Plaintiffs, Class Members,

and the New York Subclass Members to buy Defendants' Products.

103.    Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

104.    Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

105.    As a result of Defendants' recurring, unlawful deceptive acts and practices, Plaintiffs, Class Members, and New York Subclass Members are entitled to monetary damages, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, as well as interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On behalf of Plaintiffs & All Class Members)

106.    Plaintiffs repeat and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

107.    Plaintiffs, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

108.    Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

109.    Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class Members, and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good

conscience.

110.    Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

111.    It is inequitable for Defendants to retain the benefits conferred by Plaintiffs and Class Members' overpayments.

112.    Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for judgment as follows:

(a)  For an order certifying the proposed Classes as defined herein pursuant to Rule 23 of the Federal Rules of Civil Procedure and (appointing Plaintiffs to serve as representatives for the Class and Plaintiffs' counsel to serve as Class Counsel;

(b)  Awarding monetary damages and treble damages;

(c)  Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d)  Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e)  Awarding punitive damages;

(f) Awarding Plaintiffs and Class Members its costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(g) Granting such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

Date: June 4, 2025                              Respectfully submitted,

**WEITZ & LUXENBERG, PC**

/s/ Aaron Freedman

Aaron Freedman
Chantal Khalil Levy
700 Broadway
New York, NY 10003
(212) 558-5500
afreedman@weitzlux.com
ckhalil@weitzlux.com

*Counsel for Plaintiffs and the Classes*