September 19, 2025

**Via CM/ECF**
Hon. P. Kevin Castel
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Ansari et al. v. Joe & the Juice New York et al.*, Case No. 1:25-cv-04643-PKC (S.D.N.Y.)

Dear Judge Castel:

Plaintiffs Neda Ansari, Malcom Brooks, Vy Le, Annabelle Pulver, Usra Salim, and Dana Whitten (collectively, "Plaintiffs") respectfully submit this letter in response to Defendants Joe & the Juice New York LLC and Joe & the Juice US Holdings, Inc.'s (collectively, "Joe & the Juice" or "Defendants") September 15, 2025 pre-motion letter. ECF No. 28. For the reasons stated herein, Plaintiffs claims will survive Defendants' anticipated motion to dismiss and, as such, Plaintiffs should be permitted to proceed with discovery.[1]

I.   **Plaintiffs Adequately Plead Their Unjust Enrichment Claims**

   A.   **Plaintiffs' Pre-Suit Notice Is Sufficient**

Defendants erroneously claim that Plaintiffs' pre-suit notice did not adequately apprise them of Plaintiffs' claims and, thus, Plaintiffs must be foreclosed from proceeding with their claim of express breach of warranty. Defendants position is at odds with both recent case law and a fair reading of Plaintiffs' notice letter. Despite its reference to Plaintiffs' New York General Business Law claims (GBL), Plaintiffs' letter notice (ECF No. 28–1) satisfies all pre-suit pleading requirements.

Judge Oliver's recent Order Denying Reconsideration in *Patane v. Nestle Waters N. Am., Inc.* is illustrative. In *Patane*, a letter "sent by one of Plaintiffs' attorneys on behalf of one of the plaintiffs [] and a putative class to Nestlé – had notified the company that Russell believed PSW was deceptively labeled." No. 3:17-CV-1381 (VDO), 2025 WL 1633967, at *6 (D. Conn. June 9, 2025) (internal quotation marks omitted). Notably, "the letter and draft complaint (1) did not specifically mention a breach-of-contract claim and thus did not allege a set of facts that would 'constitute a breach' of a contract and (2) were not mailed on behalf of either Harrigan or Shapiro but were instead sent on behalf of another plaintiff (Russell) who had not purchased water directly from Nestlé and therefore could not notify Nestlé of any 'buyer's claim.' U.C.C. § 2-607(3)(a)." *Id.* at *7. Denying the same type of arguments raised here, the court examined UCC § 2-607(3)(a)'s pre-suit notice requirement and reaffirmed that a letter stating that the product was "deceptively labeled" was sufficient to satisfy the UCC's pre-suit notice requirement. In pertinent part, the court explained that:

---

[1] Without conceding the propriety of Defendants' arguments, Plaintiffs hereby withdraw their Magnuson Moss Warranty Act claims.

1

[Handwritten annotation:]
On Plaintiffs' application (ECF 29 at n.1), plaintiffs' Second Cause of Action (violation of Magnuson Moss Warranty Act 15 USC §§ 2301 et seq.) is dismissed. Defendants may file their proposed motion by October 17, 2025. Plaintiffs may respond by November 17, 2025 and defendants may reply by December 5, 2025.

SO ORDERED.
/s/ P. Kevin Castel, USDJ
9-24-25

> Judge Meyer was clearly correct that the letter "provided Nestlé with ample notice of the core of plaintiffs' claims[.]" And where that notice has been provided, it is not Plaintiffs' task to perform the work of Nestlé's counsel and lay out every potentially viable theory of relief in specific. As Comment Four states, the notification need only let the seller know that the transaction is "troublesome" – it need not "include a clear statement of all objections." U.C.C. § 2-607 cmt. 4. In fact, the notice need not even include "a claim for damages" or "of any threatened litigation[.]" *Id.* It cannot be that a notice need not threaten litigation but must specifically denote a claim for breach of contract.[] A customer notifying a company that a transaction is "troublesome and must be watched" suffices without more.
>
> . . .
>
> The Court concludes that Nestlé was well aware of the general allegation and that it was but a short jump for Nestlé to acknowledge that its contracts with consumers were implicated through this theory. The Court, therefore, rejects the argument that the Russell Letter needed to address the breach-of-contract claim more specifically, and it concludes that the letter put Nestlé on notice of the core of Plaintiffs' claims.

*Id.* Given the low threshold for notice, it is unsurprising that "Defendant[s] cite[] to no case supporting the assertion that the *notice* to a defendant must itself specify when a product was purchased or used." *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 467–68 (S.D.N.Y. 2023) (holding, "the 'notice required to preserve [the] right to sue for damages need only 'alert [the prospective defendant] that the transaction [was] troublesome.'" (quoting *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014))).

Here, Plaintiffs – individually and on behalf of the putative nationwide class – provided unequivocal notice, identifying both Defendants' "troublesome" conduct and the "core of plaintiffs' claims[,]" (that Joe & the Juice was lying to customers about the ingredients in its juices). *Patane*, 2025 WL 1633967, at *6.

Finally, Defendants' contentions that Plaintiffs failed to provide timely notice is likewise unpersuasive. Contrary to Defendants' case law – the most recent of which was decided in 1949, approximately three years before the UCC was first promulgated – the rule regarding what constitutes "'[a] reasonable time' for *notification from a retail consumer* . . . is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Maroney*, 695 F. Supp. 3d 466 (emphasis original) (quoting *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692, 2015 WL 4715017, at *3 (E.D.N.Y. Aug. 7, 2015) (citing N.Y. U.C.C. § 2-607 cmt. 4)). "Comment 4 reflects the view that the consumer quite often will take longer to appreciate the nature of a breach and to realize the seller may be liable for it.'" *Id.* at 466–67 (quoting *Tomasino*, 2015 WL 4715017, at *3); *accord Levin v. Gallery 63 Antiques Corp.*, No. 04-CV-1504, 2006 WL 2802008, at *19 (S.D.N.Y. Sept. 28, 2006) ("A 'reasonable time' for notification from a retail consumer 'is to be judged by different,' more lenient, standards than those applied to merchant or commercial buyers."). Given the lenient standard in the instant consumer context, a few months (at most) between learning of the unlawful conduct and providing notice to Defendants is more than reasonable. *See, e.g., Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021)

2

(holding that the "SAC adequately pleads that notice seven months after purchase was reasonably timely, insofar as the defect that [plaintiff] claims was one that, by its nature, became apparent not immediately but over time").

Here, Plaintiffs learned of the breaches following public reports in December 2024 and, within a few months, sent a notice their letter. *See* Am. Compl. ¶ 47. Defendants do not attempt to claim that they were prejudiced nor explain why the court should ignore the manifest weight of caselaw (from this jurisdiction) since 1949. To the extent timeliness may appear unreasonable (which is not the case here), it is a matter of fact for the jury. *Levin*, 2006 WL 2802008, at *19 (holding that timeliness was a "question better resolved by a jury, especially in light of the fact that there has been no showing of substantial prejudice to Defendants").

### B.     Plaintiffs Plausibly Allege that Defendants Breached an Express Warranty

In their Amended Complaint, Plaintiffs clearly allege that Joe & the Juice's menus guaranteed that their juices contained olive oil and not canola oil or a canola oil concoction. According to various industry groups, such as the North American Olive Oil Association and Olive Oil Council, "products claiming to be 'olive oil' cannot have other oils in their composition; olive oil must be extracted solely from olives and cannot be mixed with any other types of seed, vegetable, or nut oils." Am. Comp. ¶ 7.[2] Therefore, Joe & the Juice's canola oil-blend is definitionally not olive oil.[3]

Moreover, any reasonable consumer would perceive Joe & the Juice's ingredients lists to be exhaustive or, at the very least, accurate; indeed, the menus go so far as to list "ice" as an ingredient for each juice, so reasonable consumers, including Plaintiffs, would naturally assume that more substantive ingredients would be accurately disclosed. Am. Compl. ¶¶ 22, 34–36. The Second Circuit's Opinion in *Mantikas v. Kellogg Co.* is illuminating. Contrary to Defendants' claim here, the Second Circuit in *Mantikas* expressly rejected the notion that a "product is made with a specified ingredient," merely because an "iota" of that "specified ingredient is in fact present," and that to find otherwise would be "misleading" and "validate highly deceptive marketing." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018); *See also Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102-03 (E.D.N.Y. 2020) (label "Made With Aged Vanilla" in bolded and all capital letters was misleading as to sodas that contained predominantly or exclusively artificial vanilla flavoring).

---

[2] *See also, e.g.*, N.Y. Comp. Codes R. & Regs. tit. 1, § 269.1(a)(1) (defining "olive oil" as "the olive oil obtained solely from the fruit of the olive tree (Olea Europaea L.) without the use of solvents or re-esterification processes"). "New York law deems any product or label that fails to conform to these definitions 'adulterated' or 'misbranded,' and thus unlawful." *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (citing N.Y. Agric. & Mkts. Law §§ 199–a(1), 200, 201).

[3] This is much like sparkling wine from regions other than the Champagne region of France, which are definitionally not champagne.

3

Defendants' efforts to conflate the facts here with those in their purported support are misguided; those cases did not allege that the respective products' ingredients lists were inaccurate, but rather that the packaging contained false insinuations *despite* otherwise accurate ingredient disclosures. *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 804 (S.D.N.Y. 2021) ("neither the front label of Westbrae's Vanilla Soymilk nor the ingredient panel claim to identify the predominate source of its vanilla flavor other than that it is 'Natural Vanilla Flavor With Other Natural Flavors.'"); *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 78 (S.D.N.Y. 2021) ("the packaging accurately indicated that the product contained butter, and the ingredients list confirmed that butter predominated over other oils and fats"). *In re Gen. Mills Glyphosate Litig.* is likewise inapposite, in that it concerned "traces of synthetic ingredients," not inaccurate ingredient disclosures. No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *7 (D. Minn. July 12, 2017).

## II. Plaintiffs' Consumer Protection Claims Readily Satisfy Rule 8's Lenient Pleading Requirements

Defendants' assertions that Plaintiffs' allegations fail to satisfy Rule 8's pleading requirements for their consumer protection claims are meritless. *See* Ltr. at 7, 8.

Under Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (Cronan, J.) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)); *accord Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

Plaintiffs' allegations relating to their juice purchases readily satisfy Rule 8's standard. Plaintiffs allege that they purchased the juices in reliance of Joe & the Juice's misrepresentations as to the ingredients, that the purchases occurred at Joe & the Juice stores in particular areas, and that the purchases occurred during the relevant statutes of limitations. Am. Compl. ¶¶ 16–24. Thus, the Complaint puts Defendants on notice as to Plaintiffs' allegations regarding the specific products at issue, where the purchases occurred, whether that purchase occurred within the statute of limitations, and the deceptive practices committed by Defendants, which form the basis for their GBL claims and other state consumer protection statutes. *See Colpitts*, 527 F. Supp. 3d at 577 (holding that similar general allegations were sufficient to meet Rule 8). "Rule 8(a) does not mandate that 'a complaint be a model of clarity or exhaustively present the facts alleged, as long as it gives [the] defendant fair notice of what [the] plaintiff's claim is and the facts upon which it rests.'" *Id.* (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 422 (S.D.N.Y. 2010)). Plaintiffs' complaint has provided sufficient notice as to the claims here.

Defendants further contend that Plaintiffs' state consumer protection claims must be dismissed because they were pleaded together under one cause of action. Defendants point to the various elements required by the state consumer protection statutes, Ltr. at 7–8, but conveniently ignore that Plaintiffs allege all such elements ("e.g., scienter, reliance, causation"). *See, e.g.*, Am. Compl.

4

¶¶ 131 & 134 (scienter), 135 (reliance), and 134–36 (causation).  Thus, unlike the cases which Defendants rely upon – wherein the plaintiffs simply listed statutes across 50 states with no facts in support of their claims – Plaintiffs here provide adequate support.  *See* Ltr. at 7 (citing *Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 307 (S.D.N.Y. 2024)).

Additionally, to the extent that Plaintiffs' consumer protection claims sound in fraud – which they do not – or generally implicate a heightened pleading standard, Plaintiffs satisfy Rule 9(b).  "Rule 9(b) 'provides that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'"  *Schneider v. Colgate-Palmolive Co.*, 677 F. Supp. 3d 91, 101 (N.D.N.Y. 2023) (quoting *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023)).  "Pleading fraud with particularity means specifying the who, what, when, where, and how [of the fraud]."  *Id.* (quoting *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d 123, 135 (N.D.N.Y. 2022)).  Plaintiffs explicitly plead that Joe & the Juice (*who*) engaged in deceptive conduct by misrepresenting and falsely advertising the contents of its juices (*what*) on its menus in stores, on apps, and online (*where*) during the class period (*when*) by claiming to use oil olive, when in fact it used canola oil (*how*) to reap excessive profits from consumers.  These allegations are more than sufficient to survive at the motion to dismiss stage and will be fleshed out further over the course of discovery.  Am. Compl. at ¶¶ 3, 5–6, 9, 16–21, 34–37, 47–62.

### III.  Plaintiffs Seek Injunctive Relief to Prevent Further Unlawful Conduct

Defendants note that several alternative consumer protection statutes only allow for injunctive relief for private rights of action.  Ltr. at 8.  This is not a basis to dismiss Plaintiffs' claims; rather, Plaintiffs seek injunctive relief forbidding Defendants from engaging in the same or similar misconduct at present and in the future.  *See* Am. Comp., Prayer for Relief ¶ (h).[4]

### IV.  Plaintiffs' GBL Claims Are Properly Pleaded with Respect to Non-New York Plaintiffs and the Nationwide Class

Defendants further argue that the GBL is not applicable extraterritorially.  Ltr. at 6.  But there is ample case law within the Second Circuit to the contrary.  *See, e.g., Voronina v. Scores Holding Co., Inc.*, No. 16-cv-2477 (LAK), 2017 WL 74731, at *4 (S.D.N.Y. Jan. 5, 2017) (deceptive scheme conceived and implemented in New York but harmed out-of-state plaintiffs); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291 (NGG) (SMG), 2014 WL 4742509, at *15 (E.D.N.Y. Sept. 23, 2014) (denying motion to dismiss where deceptive paperwork for real estate transaction drawn up in New York and closing occurred in New Jersey).  The GBL applies to the non-New York Plaintiffs and nationwide class here because Joe & the Juice's unlawful conduct originated in and emanated from New York.  Am. Compl. ¶ 29.

---

[4] Notwithstanding, Plaintiffs note that Minnesota law provides that, "[i]n addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 [including "the Unlawful Trade Practices Act" and "other laws against false or fraudulent advertising"] may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court."  Minn. Stat. § 8.31 subd. 3a.  In light of the public benefit of this action, Plaintiffs are entitled to relief under the subdivision.

5

## V. Plaintiffs Adequately Plead Unjust Enrichment in the Alternative

Defendants argue that Plaintiffs' unjust enrichment claim should be dismissed because it is duplicative and inadequately pleaded. Ltr. at 9. Not so. "[A] claim for unjust enrichment may be pleaded in the alternative to other claims." *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376 PKC, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014) (Castel, J.) (permitting unjust enrichment claim to proceed in the alternative) (citing Fed. R. Civ. P. 8(a) ("[A] demand for the relief sought ... may include relief in the alternative or different types of relief."); and *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996) (reversing the dismissal of an unjust enrichment claim and holding that the claim was properly pleaded in the alternative to a contractual claim)). Plaintiffs' complaint, which now explicitly pleads unjust enrichment in the alternative, is therefore sufficient to proceed at this stage. Additionally, for the reasons stated above with respect to Plaintiffs' other claims, Plaintiffs readily plead unjust enrichment with sufficient particularity.

## VI. Defendants' Class Certification Arguments Are Procedurally Improper

Defendants seek to strike Plaintiffs' nationwide class allegations, and Minnesota and Washington, DC class allegations and claims, by suggesting that Plaintiffs are inadequate class representatives. Ltr. at 8–9. However, "[v]ariations in state laws do not necessarily prevent a class from satisfying the predominance requirement." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 97 (2d Cir. 2018) (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013)). Notwithstanding, Defendants' argument is premature at the motion to dismiss stage, especially given that it implicates various class certification issues, such as predominance. F.R.C.P. 23. As the Second Circuit emphasized in *Langan*, "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." 897 F.3d 88, 96 (2d Cir. 2018). As such, it is procedurally improper to determine whether the various state statutes are sufficiently similar and whether the named plaintiffs are adequate class representatives at this stage.

In *Travis v. Navient Corp.*, for instance, the defendant sought to strike, *inter alia*, the New York plaintiff's nationwide class allegations under Delaware law. The court denied the motion to strike as premature, explaining:

> [M[otions to strike material solely "on the ground that the matter is impertinent and immaterial" are disfavored. *Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (internal citations and quotations omitted); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (same). Motions to strike class allegations at the motion-to-

6

dismiss phase are therefore "[g]enerally ... deemed procedurally premature." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).

. . . Navient principally argues that Travis will be unable to "demonstrate commonality, predominance, or superiority," and will therefore be unable to certify a class pursuant to Federal Rule of Civil Procedure 23(a).[] Since it would be premature to decide this fact-specific argument at this juncture, Navient's motion to strike Travis' class allegations is denied. Navient may raise these arguments if Travis moves for class certification pursuant to Federal Rule of Civil Procedure 23.

*Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020).

Accordingly, Plaintiffs respectful request that the Court deny Defendants' efforts to strike Plaintiffs' class allegations and Minnesota and Washington, DC claims as procedurally improper.

Respectfully submitted,

*/s/ Chantal Levy*
Chantal Levy
Aaron Freedman
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
(212) 558-5500
ckhalil@weitzlux.com
afreedman@weitzlux.com

*Counsel for Plaintiffs and the Putative Classes*

7