## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEDA ANSARI, MALCOLM BROOKS, VY LE, ANNABELLE PULVER, USRA SALIM, and DANA WHITTEN, *on behalf of themselves and all others similarly situated*,<br><br>                        Plaintiffs,<br><br> v.<br><br>JOE & THE JUICE NEW YORK LLC and JOE & THE JUICE US HOLDINGS, INC.,<br><br>                        Defendants. | Case No. 1:25-cv-04643-PKC |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .......................................................................................3

PROCEDURAL HISTORY...........................................................................................5

LEGAL STANDARD....................................................................................................5

I.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6) ..............5

II.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF UNDER
RULE 12(b)(1).............................................................................................................6

ARGUMENT ................................................................................................................7

I.     THE EXPRESS WARRANTY CLAIMS (COUNT I) SHOULD BE DISMISSED
FOR FAILING TO COMPLY WITH NUMEROUS BASIC PLEADING
REQUIREMENTS.......................................................................................................7

       A.    Plaintiffs Cannot Plausibly Allege That They Gave Timely and Sufficient
Pre-Suit Notice to Joe & The Juice........................................................7

       B.    Plaintiffs Fail to Allege That Joe & The Juice Breached an Express
Warranty Concerning the Advertised Ingredient of Olive Oil...............10

II.    PLAINTIFFS' CLAIMS UNDER N.Y. GBL §§ 349 & 350 (COUNTS III & IV)
SHOULD BE DISMISSED.......................................................................................12

       A.    Plaintiffs and Putative Nationwide Class Members Cannot Recover Under
N.Y. GBL §§ 349 & 350 for Any Non-New York Transactions.........12

       B.    The New York Plaintiff Fails to State Her Individual Claims with Basic
Factual Specificity ................................................................................14

III.   THE MULTI-STATE CONSUMER PROTECTION CLAIMS (COUNT V)
PLED IN THE ALTERNATIVE MUST ALSO BE DISMISSED ..................16

       A.    Plaintiffs Fail to Plead the Multi-State Consumer Protection Claims with
Any Specificity .....................................................................................16

       B.    Several Consumer Protection Statutes Do Not Permit Private Suits for
Monetary Damages ...............................................................................18

IV.   PLAINTIFFS' ALTERNATIVE UNJUST ENRICHMENT CLAIM (COUNT VI)
SHOULD BE DISMISSED .....................................................................................18

V.    ANY CLAIMS BROUGHT UNDER MINNESOTA AND WASHINGTON, D.C.
LAWS SHOULD BE DISMISSED.........................................................................20

VI.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE
DISMISSED ..............................................................................................................21

CONCLUSION..........................................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*FDA* v. *All. for Hippocratic Med.*,
    602 U.S. 367 (2024)..........................................................................................................7, 21

*In re Aluminum Warehousing Antitrust Litig.*,
    No. 13-MD-2481 KBF, 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014), *aff'd*,
    833 F.3d 151 (2d Cir. 2016)..........................................................................................17

*Am. Fed'n of State Cnty. & Mun. Emps.* v. *Ortho-McNeil-Janssen Pharms., Inc.*,
    No. 08-CV-5904, 2010 WL 891150 (E.D. Pa. Mar. 11, 2010)...........................................9, 10

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................5

*Barr* v. *Flagstar Bank, FSB*,
    303 F. Supp. 3d 400 (D. Md. 2018).................................................................................6

*Barreto* v. *Westbrae Nat., Inc.*,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021)...........................................................................11

*Barron* v. *Snyder's-Lance, Inc.*,
    No. 13-62496-CIV, 2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) ........................................20

*Basso* v. *New York Univ.*,
    No. 16CV7295VMKNF, 2018 WL 2694430 (S.D.N.Y. June 5, 2018)...................................15

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)......................................................................................................5, 14

*Berni* v. *Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)...........................................................................................21

*Bernstein* v. *JPMorgan Chase Bank, N.A.*,
    775 F. Supp. 3d 701 (S.D.N.Y. 2025)...........................................................................14

*Beth Israel Med. Ctr.* v. *Horizon Blue Cross and Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006)...........................................................................................19

*Boyd* v. *Target Corp.*,
    750 F. Supp. 3d 999 (D. Minn. 2024)............................................................................18

*Brady* v. *Anker Innovations Ltd.*,
    No. 18-CV-11396 (NSR), 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020)...................................6

*Carter* v. *HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)............................................................................6

*Charbonnet* v. *Omni Hotels & Resorts*,
    No. 20-CV-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020).......................17

*Clemmons* v. *Upfield US Inc.*,
    667 F. Supp. 3d 5 (S.D.N.Y. 2023) (Castel, J.) ........................................................7

*In re Columbia Tuition Refund Action*,
    523 F. Supp. 3d 414 (S.D.N.Y. 2021)...................................................................19

*Comfort Springs Corp.* v. *Allancraft Furniture Shop*,
    67 A.2d 818 (Pa. Super. Ct. 1949) ......................................................................8

*Connick* v. *Suzuki Motor Co., Ltd.*,
    675 N.E.2d 584 (Ill. 1996) ................................................................................9

*Davis* v. *Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) .................................................................22

*Dettelis* v. *Sharbaugh*,
    919 F.3d 161 (2d Cir. 2019)................................................................................5

*Devey* v. *Big Lots, Inc.*,
    635 F. Supp. 3d 205 (W.D.N.Y. 2022) .................................................................15

*Dixon* v. *von Blanckensee*,
    994 F.3d 95 (2d Cir. 2021)..................................................................................5

*Duchimaza* v. *Niagara Bottling, LLC*,
    619 F. Supp. 3d 395 (S.D.N.Y. 2022) ...................................................................8

*English* v. *Danone N.A. Pub. Benefit Corp.*,
    678 F. Supp. 3d 529 (S.D.N.Y. 2023)..................................................................12

*Fed. Treasury Enter. Sojuzplodoimport* v. *Spirits Int'l N.V.*,
    400 F. App'x 611 (2d Cir. 2010) .......................................................................18

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).....................................9, 10

*In re Fyre Festival Litigation*,
    399 F.Supp.3d 203 (S.D.N.Y. 2019) (Castel, J.) ...................................................13

*In re General Mills Glyphosate Litigation*,
    No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017)......................................11

*Gianascio* v. *Giordano*,
No. 99 CV 1796 GBD, 2003 WL 22999454 (S.D.N.Y. Dec. 19, 2003) ................................19

*Goldemberg* v. *Johnson & Johnson Consumer Cos., Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................6, 19

*Goshen* v. *Mut. Life Ins. Co. of New York*,
774 N.E.2d 1190 (N.Y. 2002) ..........................................................................12, 13

*Gould* v. *Helen of Troy Ltd.*,
No. 16 CIV. 2033 (GBD), 2017 WL 1319810 (S.D.N.Y. Mar. 30, 2017) ......................15, 16

*Heller* v. *Buchbinder*,
399 A.2d 850 (D.C. 1979) ......................................................................................20

*Jackson* v. *ASA Holdings*,
751 F. Supp. 2d 91 (D.D.C. 2010) .............................................................................6

*Jackson* v. *Dole Packaged Foods, LLC*,
648 F. Supp. 3d 1039 (S.D. Ill. 2022) .....................................................................11

*Jones* v. *Goord*,
435 F. Supp. 2d 221 (S.D.N.Y. 2006) .....................................................................21

*Jung* v. *Gina Grp., LLC*,
No. 19-CV-8624, 2020 WL 3640048 (S.D.N.Y. July 6, 2020) ......................................21

*Kamara* v. *Pepperidge Farm, Inc.*,
570 F. Supp. 3d 69 (S.D.N.Y. 2021) .......................................................................11

*Kandel* v. *Dr. Dennis Gross Skincare, LLC*,
721 F. Supp. 3d 291 (S.D.N.Y. 2024) .....................................................................17

*Kassman* v. *KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013) .....................................................................14

*Lujan* v. *Defenders of Wildlife*,
504 U.S. 555 564 ...............................................................................................22

*Mahon* v. *Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) ......................................................................................6

*Marshall* v. *Hyundai Motor Am.*,
51 F. Supp. 3d 451 (S.D.N.Y. 2014) .......................................................................16

*Mazza* v. *Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .................................................................................18

*Metague* v. *Woodbolt Distribution, LLC*,
No. 8:20-CV-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021) .................................... 9

*Morris* v. *Biomet, Inc.*,
491 F. Supp. 3d 87 (D. Md. 2020) ........................................................................................... 10

*Oettle* v. *Walmart, Inc.*,
685 F. Supp. 3d 706 (S.D. Ill. 2023) ......................................................................................... 7

*Pac. Com. Co.* v. *Greer*,
19 P.2d 543 (Cal. Ct. App. 1933) .............................................................................................. 8

*Patellos* v. *Hello Prods., LLC*,
523 F. Supp. 3d 523 (S.D.N.Y. 2021) ...................................................................................... 22

*Patrick* v. *Wells Fargo Bank, N.A.*,
385 P.3d 165 (Wash. App. Div. 1 2016) ................................................................................... 18

*R & L Grain Co.* v. *Chicago E. Corp.*,
531 F. Supp. 201 (N.D. Ill. 1981) .............................................................................................. 7

*Sira* v. *Morton*,
380 F.3d 57 (2d Cir. 2004) ........................................................................................................ 4

*Stone* v. *Invitation Homes, Inc.*,
986 N.W.2d 237 (Minn. App. 2023), *aff'd*, 4 N.W.3d 489 (Minn. 2024) .............................. 18

*Tears* v. *Bos. Sci. Corp.*,
344 F. Supp. 3d 500 (S.D.N.Y. 2018) ...................................................................................... 10

*Toca* v. *Tutco, LLC*,
430 F. Supp. 3d 1313 (S.D. Fla. 2020) ...................................................................................... 6

*Tri-Plex Tech. Servs., Ltd.* v. *Jon-Don, LLC*,
241 N.E.3d 454 (Ill. 2024) ....................................................................................................... 18

*Tuttle* v. *Lorillard Tobacco Co.*,
118 F. Supp. 2d 954 (D. Minn. 2000) ........................................................................................ 6

*Tyman* v. *Pfizer, Inc.*,
No. 16CV06941, 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017), *report and
recommendation adopted*, No. 16 CV 6941-LTS-BCM, 2018 WL 481890
(S.D.N.Y. Jan. 18, 2018) ........................................................................................................... 8

*Vaccariello* v. *XM Satellite Radio, Inc.*,
295 F.R.D. 62 (S.D.N.Y. 2013) ............................................................................................... 22

*Wertymer* v. *Walmart, Inc.*,
   142 F.4th 491 (7th Cir. 2025) ................................................................6

*Williams* v. *Total Life Changes, LLC*,
   No. CV 20-2463 (MJD/HB), 2021 WL 2592385 (D. Minn. June 24, 2021).........................20

*Witherspoon* v. *Philip Morris Inc.*,
   964 F. Supp. 455 (D.D.C. 1997) ........................................................12

*Zuckman* v. *Monster Bev. Corp.*,
   958 F. Supp. 2d 293 (D.D.C. 2013) ....................................................20

**Statutes**

Cal. Com. Code § 2607 ............................................................................8

Cal. Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ...............................6

Cal. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ...........................6

Cal. False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ............................6

D.C. Code Ann. § 28:1-301(b)...................................................................20

D.C. Consumer Protection Procedures Act, D.C. Code Ann. § 28-3901 *et seq.* ...........6

Fla. Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq* ...................6

Ill. Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* ...................................................................6

Ill. Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*.......................2, 18

Magnuson-Moss Warranty Act, 15 U.S.C. § 2310 ........................................5

Md. Consumer Protection Act, Md. Code Com. Law § 13-101 *et seq.* ...........................6

Minn. Stat. § 336.1-301(b)......................................................................20

Minn. Consumer Fraud Act, Minn. Stat. § 325F.69 ....................................6, 18

Minn. Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44..................6, 18

N.Y. U.C.C. § 2-607(3)(a) .....................................................................7

N.Y. Gen. Bus. Law § 349................................................................... *passim*

N.Y. Gen. Bus. Law § 350................................................................... *passim*

Penn. U.C.C. § 2607(c)(1) ...........................................................................................9

U.C.C. § 2-313 .................................................................................................1, 10

U.C.C. § 2-607 ...................................................................................................7, 8

Wa. Consumer Protection Act, Wash. Rev. Code 19.86.010 *et seq.* ............................................18

**Other Authorities**

Fed. R. of Civ. P. 8.........................................................................2, 5, 14, 15, 16

Fed. R. of Civ. P. 9(b).........................................................................2, 6, 17, 19

Fed. R. of Civ. P. 12(b)(1) ..........................................................................1, 6

Fed. R. of Civ. P. 12(b)(6) ..........................................................................1, 5

Fed. R. of Civ. P. 23......................................................................................21

Defendants, Joe & The Juice New York LLC and Joe & The Juice US Holdings, Inc. (collectively, "Joe & The Juice"), respectfully submit this memorandum of law in support of their motion to dismiss the Amended Class Action Complaint ("FAC") pursuant to Fed. R. of Civ. P. 12(b)(6) and Fed. R. of Civ. P. 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs—six individuals who allegedly purchased juice products from Joe & The Juice— bring this putative nationwide class action claiming that Joe & The Juice breached express warranties, violated state consumer protection laws, and was unjustly enriched by advertising on its menus that certain juice products contained "olive oil," when the oil used was instead a mixture of "95% canola oil" and only 5% olive oil. FAC ¶ 6. Plaintiffs' theory that Joe & The Juice committed a so-called "olive oil fraud," *id.* ¶ 10, is entirely based on a 2024 TikTok video posted by a purported customer who claimed that, during his visit to an unspecified Joe & The Juice store, an unidentified staff member showed him a tin of oil used in the juice products which was labeled as a canola-and-olive-oil blend. Other than that, the FAC is sparse on basic facts about Plaintiffs' purchases and essential details regarding the bases for Plaintiffs' claims. This defect, along with several other pleading deficiencies, warrants dismissal of the FAC in its entirety.

*First*, Plaintiffs' express warranty claims fail because Plaintiffs have not pled (nor could have pled) that they provided Joe & The Juice the requisite timely and sufficient notice that any particular transaction constituted a breach, which is a threshold requirement under the U.C.C. Indeed, one of the Plaintiffs, Usra Salim, does not allege that she provided any notice at all to Joe & The Juice. Additionally, Plaintiffs fail to plausibly allege that Joe & The Juice affirmatively warranted that the oil used in the juices was 100% olive oil or that the juices were free of canola oil, also dooming their claims under U.C.C. § 2-313.

*Second*, while all six named Plaintiffs assert claims under the New York consumer

protection laws, none of their claims can survive.  Five Plaintiffs do not allege having made any purchases or having been deceived in New York and they are therefore precluded from recovery under the New York consumer protection laws.  The lone Plaintiff who claims to have purchased juices in New York does not even aver the most basic facts—including the date(s) or store location(s) of *any* of her alleged purchases—required to state a claim under the Rule 8 pleading standard.

*Third,* Plaintiffs' multi-state consumer protection claims must be dismissed because the FAC has not satisfied the Rule 8 pleading standard (let alone the Rule 9(b) standard some of the states require) by simply listing the statutes without further explanation.  Plaintiffs have not attempted to explain how each state's law differs from each other or how Joe & The Juice violated each specific statute.

*Fourth*, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs do not allege that they lack an adequate remedy at law for their purported injury.  Furthermore, Plaintiffs fail to meet their burden of pleading the claim with the requisite Rule 9(b) particularity.

*Fifth*, any claims brought under any Minnesota and Washington, D.C. laws as well as the Illinois Uniform Deceptive Trade Practices Act should be dismissed.  Plaintiffs do not claim to be residents of or to have made purchases in these two jurisdictions, and are therefore precluded from recovering under the express warranty and consumer protection laws of either jurisdiction.  And because no plaintiffs are named to represent the Minnesota and Washington, D.C. subclasses, any claims brought on behalf of these two subclasses should be dismissed.  Additionally, the claims brought under the Illinois Uniform Deceptive Trade Practices Act and the Minnesota consumer protection statutes must be dismissed because those statutes do not permit a private cause of action for monetary damages that Plaintiffs are seeking here.

*Finally*, Plaintiffs' claims for injunctive relief must be dismissed because they fail to plead any risk of future harm sufficient to confer Article III standing.

For all these reasons, discussed more fully below, Joe & The Juice respectfully requests that the FAC be dismissed in its entirety.

## FACTUAL BACKGROUND

Named Plaintiffs filed this case with a complaint that, even after amendment, contains sparse factual details. While Plaintiffs each claim that they purchased juice products from Joe & The Juice multiple times, they have not provided even an approximate date for any of their purchases, or specified from which of the 65 cafes that they allege Joe & The Juice operates across eight states and Washington, D.C. that they purchased the juice(s). *See* FAC ¶¶ 1, 16–21.

- Plaintiff Neda Ansari, a resident of Washington State, allegedly purchased juice products, including the Green Tonic juice, multiple times in California and Washington. FAC ¶ 16. Plaintiff Ansari does not allege when she purchased the products or at which store location(s).

- Plaintiff Malcolm Brooks, a resident of Pennsylvania, allegedly purchased juice products multiple times in Pennsylvania. *Id.* ¶ 17. Plaintiff Brooks does not allege what juice products he purchased, whether the products he allegedly purchased contained olive oil as an ingredient, when he purchased them, or at which store location(s).

- Plaintiff Vy Le, a resident of California, allegedly purchased juice products, including the Green Shield juice, multiple times in California. *Id.* ¶ 18. Plaintiff Le does not allege when he purchased the products or at which store location(s).

- Plaintiff Annabelle Pulver, a resident of New York, allegedly purchased juice products, including the AMG, Green Tonic, and Herb Tonic juices, multiple times in New York and Florida. *Id.* ¶ 19. Plaintiff Pulver does not allege when she purchased the products or at which store location(s).

- Plaintiff Usra Salim, a resident of Illinois, allegedly purchased juice products, including the Go Away Doc and Pick Me Up juices, multiple times in Illinois. *Id.* ¶ 20. Plaintiff Salim does not allege when she purchased the products or at which store location(s).

- Plaintiff Dana Whitten, a resident of Maryland, allegedly purchased juice products, including the Go Away Doc juice, multiple times in Maryland. *Id.* ¶ 21. Plaintiff

Whitten does not allege when she purchased the product or at which store location(s).

Many, but not all, of the juice products that Joe & The Juice sells contain a small amount of olive oil, as indicated on its menus. *Id.* ¶¶ 35–36. Plaintiffs, who purportedly purchased juice products containing olive oil as an ingredient, claimed that Joe & The Juice deceived consumers by using an oil blend containing 95% canola oil and 5% olive oil based on a TikTok video posted by a customer in December 2024. *Id.* ¶¶ 6, 47. According to that customer, during his visit to an unspecified Joe & The Juice store, he asked an unidentified staff member to see the olive oil the store was using for the juice products, and the staff member showed him a tin of oil that was "labeled as 95 percent canola oil and only 5 percent olive oil." *See* Ex. A (website cited at FAC ¶ 47, n.6).[1]

In April 2025, five of the six Plaintiffs in this action—Plaintiffs Ansari, Brooks, Le, Pulver, and Whitten—sent a letter to Joe & The Juice through their counsel. Ex. B.[2] In the letter, they claim that Joe & The Juice "deceptively advertised [the juice products] as containing olive oil instead of harmful canola oil," which was in violation of New York General Business Law ("N.Y. GBL") §§ 349 and 350. *Id.* at 1. Their letter, they claim, was sent "as notice pursuant to Article 22-A of the [N.Y. GBL]." *Id.* Plaintiff Salim was not named in the letter and has not claimed to have sent any other letter to Joe & The Juice.

---

[1]  Although the FAC does not itself discuss the text of the dailydot.com source it cites that reported on the TikTok video, the Court should deem it to be incorporated by reference in the FAC because it is cited in the FAC, *see* FAC ¶ 47, n.6, and—as the sole piece of fact that Plaintiffs allege to support their contention that Joe & The Juice used an allegedly problematic oil mixture, *see id.* at ¶ 47—is "integral" to Plaintiffs' pleading. *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (citations omitted)).

[2]  The Court should deem the putative pre-suit notice to be incorporated by reference in the FAC because the FAC describes the correspondence, FAC ¶¶ 89, 105, and the transmittal of a qualifying pre-suit notice is "integral" to Plaintiffs' express warranty claims, *see supra* note 1.

## PROCEDURAL HISTORY

Plaintiffs filed this action on June 4, 2025 in which they allege that Joe & The Juice breached the implied warranty of merchantability laws of eight states and Washington, D.C.; violated N.Y. GBL §§ 349 and 350; and was unjustly enriched.  ECF No. 5.  Defendants filed a pre-motion letter outlining the numerous flaws in Plaintiffs' complaint, ECF No. 23, after which Plaintiffs sought to (and were granted leave to) amend their complaint, ECF No. 24, at 1, and filed the present FAC on September 5, 2024, ECF No. 27.  The FAC asserts claims under (i) the express warranty laws of eight states and Washington, D.C. (Count I); (ii) the Magnuson-Moss Warranty Act (Count II); (iii) the N.Y. Deceptive and Unfair Trade Practices Act and False Advertising Law (N.Y. GBL §§ 349 & 350) (Counts III–IV); (iv) the consumer protection laws of eight other jurisdictions in the alternative (Count V); and (v) an unjust enrichment theory in the alternative (Count VI).  *Id.*  Defendants again filed a pre-motion letter and, in response, Plaintiffs withdrew their Magnuson-Moss Warranty Act claim, ECF No. 29, resulting in the Court's dismissal of Count II.  ECF No. 30.

## LEGAL STANDARD

### I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER RULE 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint does not need detailed factual allegations, Rule 8 of the Federal Rules of Civil Procedure demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Dettelis* v. *Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019).  And while well-pleaded factual allegations contained in the complaint are assumed to be true, the Court "need not consider conclusory allegations or legal conclusions couched as factual allegations."  *Dixon* v. *von*

*Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation modified).

Moreover, where, as here, Plaintiffs' claims sound in fraud, *see, e.g.*, FAC ¶ 10 (alleging "olive oil fraud"), they must—for their claims brought under the consumer protection statutes of California, Maryland, Minnesota, Florida, Illinois, and Washington, D.C. as well as their claim for unjust enrichment—satisfy the heightened particularity requirements of Rule 9(b). *See, e.g.*, *Brady* v. *Anker Innovations Ltd.*, No. 18-CV-11396 (NSR), 2020 WL 158760, at *8 (S.D.N.Y. Jan. 13, 2020) (California's Unfair Competition Law, Consumer Legal Remedies Act, and False Advertising Law); *Wertymer* v. *Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025) (Illinois' Consumer Fraud and Deceptive Practices Act); *Barr* v. *Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018) (Maryland's Consumer Protection Act); *Tuttle* v. *Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000) (Minnesota's Consumer Fraud Act and Uniform Deceptive Trade Practices Act); *Toca* v. *Tutco, LLC*, 430 F. Supp. 3d 1313, 1328 (S.D. Fla. 2020) (Florida's Deceptive and Unfair Trade Practices Act); *Jackson* v. *ASA Holdings*, 751 F. Supp. 2d 91, 98 (D.D.C. 2010) (D.C.'s Consumer Protection Procedures Act); *Goldemberg* v. *Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (unjust enrichment claim).

## II.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF UNDER RULE 12(b)(1)

A court must dismiss a case pursuant to Rule 12(b)(1) if a plaintiff lacks Article III standing. *See Mahon* v. *Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). Where the challenge to standing is facial, "the task of the district court is to determine whether the pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation modified). For a plaintiff to have standing to pursue injunctive relief for future harm, the purported future injury "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to

occur soon." *FDA* v. *All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation omitted).

## ARGUMENT

**I.    THE EXPRESS WARRANTY CLAIMS (COUNT I) SHOULD BE DISMISSED FOR FAILING TO COMPLY WITH NUMEROUS BASIC PLEADING REQUIREMENTS**

### A.    Plaintiffs Cannot Plausibly Allege That They Gave Timely and Sufficient Pre-Suit Notice to Joe & The Juice

To state a claim for breach of express warranty under the laws of the nine jurisdictions alleged in the FAC, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller or be barred from any remedy." *Clemmons* v. *Upfield US Inc.*, 667 F. Supp. 3d 5, 19 (S.D.N.Y. 2023) (Castel, J.) (quoting N.Y. U.C.C. § 2-607(3)(a)). Here, Plaintiffs fail to plead that they gave timely and sufficient pre-suit notice as required under U.C.C. § 2-607.

*First*, the FAC does not identify *any* pre-suit notice given on behalf of Plaintiff Usra Salim. The letter Defendants received from Plaintiffs' counsel in April 2025 does not mention Plaintiff Salim, *see* Ex. B at 1, and therefore could not have notified Defendants of her "*particular transaction* [that] is troublesome" or "apprised [Defendants] of the trouble with the particular product purchased *by the particular buyer*," *Oettle* v. *Walmart, Inc.*, 685 F. Supp. 3d 706, 710 (S.D. Ill. 2023) (second emphasis added) (citation modified). Accordingly, the express warranty claim as to Plaintiff Salim must be dismissed. And, because Plaintiff Salim is the sole Plaintiff who allegedly resided in or made any purchase in Illinois, the Illinois express warranty claim must be dismissed because no other Plaintiff has standing to bring that claim. *See R & L Grain Co.* v. *Chicago E. Corp.*, 531 F. Supp. 201, 206 (N.D. Ill. 1981).

*Second*, the FAC fails to adequately plead facts that the other five Plaintiffs gave reasonably prompt notice, which requires that "the buyer [] within a reasonable time after he

*discovers or should have discovered any breach* notif[ies] the seller of breach or be barred from

any remedy." U.C.C. § 2-607(3)(a) (emphasis added). Indeed, Plaintiffs do not even provide an

approximate date for when any of them discovered the alleged breach, which makes it "impossible

to determine non-speculatively that notice was timely." *Duchimaza* v. *Niagara Bottling, LLC*, 619

F. Supp. 3d 395, 419 (S.D.N.Y. 2022). Nor does the FAC allege "when [each Plaintiff] . . . should

have discovered the alleged breach of warranty." *See Tyman* v. *Pfizer, Inc.*, No. 16CV06941, 2017

WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, No. 16 CV

6941-LTS-BCM, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018). Plaintiffs appear to suggest that

they could not have discovered the alleged breach until the report about Defendants' use of the oil

blend transpired in December 2024, because "consumers lack the meaningful ability to test or

independently ascertain or verify" the ingredients "at the point of purchase." *See* FAC ¶¶ 45, 47

& n.6. But this contention is contradicted by the very report upon which they rely: there, a

customer had no difficulty asking a staff member about the ingredients while making the purchase

in the store and immediately received the requested information. *See* Ex. A. And even assuming

that Plaintiffs have plausibly stated that they could only have discovered the alleged breach

through the December 2024 report, they have not pled any factual support for why contacting Joe

& The Juice four months later was reasonably prompt.[3]

---

[3] Indeed, many courts have held that even notices provided sooner than four months are not reasonably prompt. *See, e.g.*, *Pac. Com. Co.* v. *Greer*, 19 P.2d 543, 546 (Cal. Ct. App. 1933) (affirming that pre-suit notice was insufficient because, *inter alia*, "[f]ailure to notify the seller . . . within two months after knowledge of the defect has been held to be an unreasonable delay" (citing *Jackson* v. *Porter Land & Water Co.*, 90 P. 122, 125 (Cal. 1907))); Cal. Com. Code § 2607 cmt. 4 (citing *Pac. Com. Co.* with approval); *Comfort Springs Corp.* v. *Allancraft Furniture Shop*, 67 A.2d 818, 819–20 (Pa. Super. Ct. 1949) (affirming that pre-suit notice was insufficient because the buyer waited "approximately ten weeks after delivery" of the merchandise before "attempt[ing] to rescind the contract of sale" and further explaining that "where the breach of warranty is one that is undeniably discoverable, a delay of one month in giving notice of the breach was an unreasonable one" (citing *Tinius Olsen Testing Mach. Co.* v. *Wolf Co.*, 146 A. 541, 542 (Pa. 1929))).

*Third*, Plaintiffs plead no facts that permit a conclusion that their pre-suit notice was sufficient. To begin with, the FAC nowhere alleges that the notice apprised Defendants of any "*particular transaction* [that was] troublesome" which Defendants should investigate. *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 WL 4647512, at *28 (E.D.N.Y. Aug. 29, 2013) (quoting *Connick* v. *Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 590 (Ill. 1996)) (emphasis added). Indeed, the April 2025 letter provides no information whatsoever about when, where, and what any of the five Plaintiffs purchased and—by referencing only two New York consumer protection statutes and therefore impliedly referencing only the purchase of products in New York—could not possibly have placed Joe & The Juice on notice of any transaction at non-New York store locations. *See* Ex. B; *see also Am. Fed'n of State Cnty. & Mun. Emps.* v. *Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-CV-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010) ("The purpose of notification under [the Pennsylvania U.C.C.] § 2607(c)(1) is not intended to merely make the seller aware of the breach; rather, the notification *must 'inform [ ] the seller that the transaction is claimed to involve a breach.'*" (quoting § 2607(c)(1) cmt. 4) (emphasis added)).

Moreover, for a notice to be sufficient, the seller "must also be informed that the buyer considers him to be *in breach of the contract [or express warranty in our case].*" *In re Frito-Lay*, 2013 WL 4647512, at *28 (emphasis added) (citation modified); *accord Connick*, 675 N.E.2d at 590 (Ill. 1996). Here, Plaintiffs' April 2025 letter does not mention any warranty whatsoever, and only broadly claims violations of the N.Y. GBL.[4] *See* Ex. B. Therefore, the FAC contains no facts showing that the notice adequately apprised Joe & The Juice of a claimed breach of express warranty, much less that the notice was sufficient to "*explain the alleged breach.*" *Metague* v. *Woodbolt Distribution, LLC*, No. 8:20-CV-02186-PX, 2021 WL 2457153, at *8 (D. Md. June 16,

---

[4] The letter also represented that Plaintiffs intended to pursue a suit for monetary damages and made no mention of injunctive relief. Ex. B at 3.

2021) (emphasis added) (citation modified) (dismissing claim for failure to provide pre-suit notice, in which the buyer "must explain the alleged 'breach, the particular goods that have been impaired, and set forth the nature of the nonconformity'" (quoting *Doll* v. *Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011))); *see also In re Frito-Lay*, 2013 WL 4647512, at *28 (notice is insufficient when only providing the seller with "generalized knowledge" about the alleged defect); *Am. Fed'n of State Cnty. & Mun. Emps.*, 2010 WL 891150, at *6 (rejecting the plaintiff's argument that notice is unnecessary if defendant "had actual or constructive knowledge of the breach").

### B.    Plaintiffs Fail to Allege That Joe & The Juice Breached an Express Warranty Concerning the Advertised Ingredient of Olive Oil

Even if Plaintiffs provided timely and sufficient pre-suit notice (they did not), the Court should still dismiss their express warranty claims because Plaintiffs have not identified any affirmative statement that forms the basis of the express warranty that Joe & The Juice allegedly breached. *See* U.C.C. § 2-313 (requiring, *inter alia*, an "affirmation of fact or promise"); *Tears* v. *Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 512–13 (S.D.N.Y. 2018) ("[P]laintiff must plead some affirmative statement of fact that forms the basis of the warranty" that is "sufficiently specific to create express warranties" (citation modified)). Here, the FAC fails to articulate a cogent theory of the terms that Joe & The Juice supposedly breached: indeed, it is unclear whether Plaintiffs are accusing Joe & The Juice of a breach for its use of olive oil that was not 100% pure, or for a breach because of the inclusion of canola oil as an additional ingredient. Regardless, their claims fail because Plaintiffs have not identified an affirmative statement of either and there can be no "warranty by omission." *See Morris* v. *Biomet, Inc.*, 491 F. Supp. 3d 87, 108 (D. Md. 2020) ("Warranty by omission would be at odds with the Maryland [U.C.C's] definition of an express warranty, which requires an affirmative statement." (citation omitted)); *Tears*, 344 F. Supp. 3d at 512.

Two of this Court's decisions are instructive. In *Barreto* v. *Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021), this Court dismissed an express warranty claim where the defendant labeled its soymilk beverage "Vanilla Soymilk" when the product was not flavored exclusively with natural vanilla. *Id.* at 800, 806. The Court rejected the plaintiff's allegation "that the labeling . . . created an express warranty that the product used solely natural vanilla to flavor the soymilk" because the "product *does not state* it is made exclusively with natural vanilla." *Id.* at 806 (emphasis added). And in *Kamara* v. *Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69 (S.D.N.Y. 2021), this Court again dismissed an express warranty claim where the plaintiff alleged that the defendant's cracker product, labeled "Golden Butter," would mislead consumers "into thinking that they are buying 'a cracker which is all or predominantly made with butter,' when, in fact, the Golden Butter crackers also contain vegetable oils." *Id.* at 74, 80.

Here, Joe & The Juice made no affirmation or promise on its menus about the purity of the olive oil used in its juice products. *See* FAC ¶¶ 35–36. The absence of any affirmative statement that the juice products contained only "100%" olive oil aligns this case with *Barreto* and *Kamara*, and distinguishes it from those in which courts have found that plaintiffs did allege an express warranty claim. *See, e.g.*, *Jackson* v. *Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039, 1047 (S.D. Ill. 2022) (declining to dismiss an express warranty claim where a fruit bowl label stated "in 100% fruit juice" but the product contained the "*added* ingredients of ascorbic or citric acid" (emphasis added)).

Nor do Plaintiffs plausibly allege that Joe & The Juice breached an express warranty by including canola oil—in addition to olive oil—in their products, because Joe & The Juice did not represent anywhere on its menus that the lists of ingredients on the menus were exhaustive, *see* FAC ¶¶ 35–36, and therefore "did not warrant that [its juices] would be free from" canola oil. *In*

*re General Mills Glyphosate Litigation*, No. CV 16-2869, 2017 WL 2983877, at *7 (D. Minn. July 12, 2017) (dismissing express warranty claim where the defendant's granola bar packaging stated "Made with 100% Natural Whole Grain Oats" because such labeling did not constitute an express warranty that the product "would be free from trace glyphosate" and "there is no allegation that the oats, themselves, are not natural"); *see also Witherspoon* v. *Philip Morris Inc.*, 964 F. Supp. 455, 465 (D.D.C. 1997) (dismissing express warranty claim because the plaintiff could not plead a claim through a "warranty by omission").

## II. PLAINTIFFS' CLAIMS UNDER N.Y. GBL §§ 349 & 350 (COUNTS III & IV) SHOULD BE DISMISSED

### A. Plaintiffs and Putative Nationwide Class Members Cannot Recover Under N.Y. GBL §§ 349 & 350 for Any Non-New York Transactions[5]

Plaintiffs and putative nationwide class members cannot recover under N.Y. GBL §§ 349 & 350 for any purchases made outside of New York because, under N.Y. GBL §§ 349 & 350, "the transaction in which the consumer is deceived *must occur in New York*." *Goshen* v. *Mut. Life Ins. Co. of New York*, 774 N.E.2d 1190, 1195 (N.Y. 2002) (emphasis added) (affirming dismissal of N.Y. GBL claims for out-of-state plaintiffs). While all six Plaintiffs assert claims under N.Y. GBL §§ 349 & 350, five Plaintiffs do not allege to have purchased any juice products from Joe & The Juice in New York or to have been deceived in New York. *See* FAC ¶¶ 16–18, 20–21. Therefore, they cannot recover under the N.Y. GBL and their claims must be dismissed. Nor can the sole New York Plaintiff, Anabelle Pulver, recover for the purchases she purportedly made in Florida, *id*. at ¶ 19, and her N.Y. GBL claims with respect to those purchases must be dismissed too, *see English* v. *Danone N.A. Pub. Benefit Corp.*, 678 F. Supp. 3d 529, 536 (S.D.N.Y. 2023) (the

---

[5] Plaintiffs bring Counts III and IV—both of which concern only New York consumer protection laws—on behalf of putative nationwide class members and New York subclass members. FAC ¶¶ 108–128.

territorial applicability "does not turn on the residency of the parties," but rather "focuses on whether the allegedly deceptive transaction occurred in New York" (quoting *Goshen*, 774 N.E.2d at 1196)).[6]

Plaintiffs' attempt to plead a connection between New York and their transactions by alleging that "Defendants' . . . representations and omissions regarding the Products emanated out of its headquarters in New York," FAC ¶ 29, also fails. This exact theory has been rejected by both the New York Court of Appeals and this Court. *See In re Fyre Festival Litigation*, 399 F. Supp. 3d 203, 223 (S.D.N.Y. 2019) (Castel, J.) (holding that a similar "assertion of ties to New York is insufficient" for out-of-state residents and explaining that *Goshen* "reject[ed] [a] section 349 claim by non-New York plaintiffs based on allegations that deception was 'contrived and implemented' in New York by defendants that 'have extensive ties to New York and conduct business in this state'" (citing *Goshen*, 774 N.E.2d at 1193, 1196)). And although "[t]he Second Circuit recognized a split of authority following *Goshen* as to whether the test asked where the plaintiff was deceived, or where the transaction following the deceptive act occurred," *id.* (citing *Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013)), under either standard, the out-of-state Plaintiffs' claims fail because the FAC nowhere pleads that any of them were deceived in New York or made purchases in New York, *see id.* at 223–24 (dismissing N.Y. GBL claims because "under either of the two divergent lines of decision that have developed since *Goshen*," the complaint "does not sufficiently allege ties to New York to support a claim under section 349" (citation modified)).

---

[6] Plaintiff Pulver's claims to recover for her alleged purchases in New York also fail because she has not adequately pled basic facts concerning the allegedly problematic purchase(s). *See infra* p.14.

For the same reason, putative members of the nationwide class cannot recover under N.Y. GBL §§ 349 & 350 for any transactions made outside of New York.  And since the putative nationwide class members who did purchase in New York are already members of the New York subclass who also bring these claims, the Court should dismiss the N.Y. GBL counts with respect to the putative nationwide class entirely.[7]  *See Kassman* v. *KPMG LLP*, 925 F. Supp. 2d 453, 469–70 (S.D.N.Y. 2013) (striking New York statutory class claims at the pleading stage "brought on behalf of people who do or did not live or work in New York State" because of "the presumption against extraterritoriality").

### B.    The New York Plaintiff Fails to State Her Individual Claims with Basic Factual Specificity

Plaintiff Pulver's N.Y. GBL claims even as to her purchases allegedly made in New York fail because she has not pled the most basic facts concerning any of those purchases as required under Rule 8.  *See, e.g.*, *Bernstein* v. *JPMorgan Chase Bank, N.A.*, 775 F. Supp. 3d 701, 715 (S.D.N.Y. 2025) ("Although the pleading standard plaintiffs must meet does not require an exhaustive catalogue of every fact, a complaint entirely lacking in specific allegations is simply not sufficient." (citation modified)).

Indeed, the FAC is devoid of any factual details about Plaintiff Pulver's purchases of Defendants' products other than a short list of certain juices she claimed to have purchased.  FAC ¶ 19.  The FAC does not specify when she purchased those products or at which store location.  Such bare assertions do not afford Defendants "fair notice of what the . . . claim is and the grounds upon which it rests," as required under Rule 8, *Twombly*, 550 U.S. at 555 (citation omitted), and courts in New York have dismissed N.Y. GBL §§ 349 & 350 claims that were similarly vaguely

---

[7]    As explained in the next section, the New York subclass's claim also will not survive because its class representative, Plaintiff Pulver, fails to state her individual claims.  *See infra* Argument Section II.B.

pled,[8] *see, e.g.*, *Devey* v. *Big Lots, Inc.*, 635 F. Supp. 3d 205, 214–15 (W.D.N.Y. 2022) (dismissing N.Y. GBL §§ 349 & 350 claims where the plaintiff vaguely pled that she "purchased the product at least once at a store in Rochester, New York . . . within the relevant statute of limitations" and averred that she had read and relied on the label's representation, without specifying the dates, time, place, or sequence of events).

Crucially, Plaintiff Pulver's failure to provide even approximate date(s) of when she purchased the products in New York makes it impossible for Defendants to investigate whether she bought any products within the three-year statute of limitations for N.Y. GBL §§ 349 & 350 claims. *See Basso* v. *New York Univ.*, No. 16CV7295VMKNF, 2018 WL 2694430, at *2 (S.D.N.Y. June 5, 2018). In an attempt to make up for the lack of dates for any purchases, the FAC asserts that "[a]ny applicable statute of limitations has been tolled by the 'delayed discovery' rule," on the basis that "Plaintiffs did not know (and had no way of knowing) that the Products contained canola oil because Defendants kept this information secret." FAC ¶ 63. This, however, cannot salvage Plaintiff Pulver's claims.

*First*, the accrual of N.Y. GBL §§ 349 & 350 claims is "not dependent upon any date when discovery of the alleged deceptive practice is said to occur," but rather begins "when a plaintiff is injured by the actions alleged to have violated the statute." *Gould* v. *Helen of Troy Ltd.*, No. 16 CIV. 2033 (GBD), 2017 WL 1319810, at *2 (S.D.N.Y. Mar. 30, 2017) (citation modified). Here, Plaintiff Pulver's alleged injury occurred when she purchased the juice products (the date of

---

[8]  Defendants need not address this pleading deficiency with respect to the other five Plaintiffs because, as discussed earlier, they have no standing to bring N.Y. GBL claims. *Supra* Argument Section II.A. That said, the other five Plaintiffs' individual purchases are pled with the exact same formulaic statements as Plaintiff Pulver's, differing only in the product names and states, and therefore are similarly deficient in meeting the factual specificity required under Rule 8. *See* FAC ¶¶ 16–18, 20–21.

which is unknown from the FAC), not when she allegedly discovered that the juice products contained the oil blend.

 *Second*, to the extent Plaintiff Pulver is seeking to make out a claim for equitable tolling by alleging that Joe & The Juice "kept this information secret," FAC ¶ 63, she fails to state a valid basis because the alleged act of keeping the information about using the oil blend "secret" is exactly "the same deceptive conduct that Plaintiffs allege forms the basis of their § 349 claims," *Marshall* v. *Hyundai Motor Am*., 51 F. Supp. 3d 451, 464 (S.D.N.Y. 2014). Equitable tolling requires something more: the defendant must have committed an "additional" act to conceal the deception that allegedly violated N.Y. GBL §§ 349 & 350. *Id.* Where, as here, an "alleged concealment consist[s] of nothing but [the] defendants' failure to disclose the wrongs they had committed, . . . the defendants were not estopped from asserting a statute of limitations defense." *Id.* (quoting *Corsello* v. *Verizon New York, Inc*., 967 N.E.2d 1177, 1184 (N.Y. 2012)); *see also Gould*, 2017 WL 1319810, at *2–3 (rejecting an equitable tolling assertion premised on fraudulent concealment when the "alleged concealment consists of nothing but the defendants' failure to disclose the wrongs they had committed," and the plaintiff "fail[ed] to allege any 'later fraudulent misrepresentations'" and "any facts showing that Plaintiff exercised due diligence to discover the claim").

## III. THE MULTI-STATE CONSUMER PROTECTION CLAIMS (COUNT V) PLED IN THE ALTERNATIVE MUST ALSO BE DISMISSED

### A. Plaintiffs Fail to Plead the Multi-State Consumer Protection Claims with Any Specificity

 In an attempt to plead an alternative to their N.Y. GBL claims, Plaintiffs allege that Joe & The Juice violated the consumer protection statutes of California, Florida, Illinois, Maryland, Minnesota, Pennsylvania, Washington, and Washington, D.C. FAC ¶ 130. However, Plaintiffs fail to plead their claims with the required specificity under Rule 8, much less the more onerous

Rule 9(b) standard required for their claims brought under certain consumer protection statutes of California, Florida, Illinois, Maryland, Minnesota, and Washington, D.C. *Supra* Legal Standard Section I.

In the FAC, Plaintiffs merely listed 12 statutes from these jurisdictions "that could provide possible causes of action without explaining even the broadest contours of how those statutes were violated." *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4743425, at *1 (S.D.N.Y. Sept. 15, 2014) (citation omitted), *aff'd*, 833 F.3d 151 (2d Cir. 2016); FAC ¶ 130. Such attempts by Plaintiffs to state a multi-state consumer protection claim—"without even listing the elements of these statutes, let alone explaining how their factual allegations establish valid claims for relief under them"—are routinely rejected by the courts. *In re Aluminum Warehousing Antitrust Litig.*; *see also Kandel* v. *Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 307 (S.D.N.Y. 2024) (dismissing a 50-state consumer protection claim because "[m]erely listing the name and code section of other states' consumer protection statutes does not suffice to state a claim"). Insofar as Plaintiffs tack on a few conclusory, boilerplate assertions about general elements such as materiality, scienter, and reliance, at the end of their list of statutes, *see* FAC ¶¶ 131–38, they make no effort to link any of the elements to any specific state statutes or explain what each statute requires.

As explained in *In re Aluminum Warehousing Antitrust Litigation*, such pleading "deficiency is a significant problem" because "there is considerable variation in the elements of the state consumer protection statutes." 2014 WL 4743425, at *1. Indeed, here, the elements required to establish claims under the eight jurisdictions' consumer protection laws differ significantly and cannot be plausibly pled in one fell swoop. *See, e.g.*, *Charbonnet* v. *Omni Hotels & Resorts*, No. 20-CV-01777-CAB-DEB, 2020 WL 7385828, at *4 (S.D. Cal. Dec. 16, 2020)

(requiring reliance under all three California statutes); *Mazza* v. *Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (Pennsylvania law requires scienter but California law does not); *Patrick* v. *Wells Fargo Bank, N.A.*, 385 P.3d 165, 171 (Wash. App. Div. 1 2016) (requiring "but for" causation under Washington's Consumer Protection Act).  Accordingly, Plaintiffs' multi-state consumer protection claims must be dismissed.

### B.    Several Consumer Protection Statutes Do Not Permit Private Suits for Monetary Damages

Plaintiffs' consumer protection claims brought under Illinois' Uniform Deceptive Trade Practices Act, Minnesota's Uniform Deceptive Trade Practices Act, and Minnesota's Consumer Fraud Act should also be dismissed for the reason that these statutes do not permit a private cause of action for monetary damages, which Plaintiffs here are seeking.[9]  *See* FAC ¶¶ 130, 138; *Tri-Plex Tech. Servs., Ltd.* v. *Jon-Don, LLC*, 241 N.E.3d 454, 460 (Ill. 2024) (Illinois' Uniform Deceptive Trade Practices Act); *Boyd* v. *Target Corp.*, 750 F. Supp. 3d 999, 1031 (D. Minn. 2024) (Minnesota's Uniform Deceptive Trade Practices Act); *Stone* v. *Invitation Homes, Inc.*, 986 N.W.2d 237, 250 (Minn. App. 2023) (Minnesota's Consumer Fraud Act), *aff'd*, 4 N.W.3d 489 (Minn. 2024).

## IV.    PLAINTIFFS' ALTERNATIVE UNJUST ENRICHMENT CLAIM (COUNT VI) SHOULD BE DISMISSED

Plaintiffs' unjust enrichment claim should also be dismissed.[10]  *First*, "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury*

---

[9]    Insofar as Plaintiffs seek injunctive relief under these statutes, *see* ECF No. 29, at 5, the FAC does not even state anywhere a request for such injunctive relief, *see* FAC ¶¶ 129–38.  And, in any event, as explained below, Plaintiffs lack Article III standing to seek injunctive relief.  *Infra* Argument Section VI.

[10]    The FAC is silent as to which state's unjust enrichment law Plaintiffs seek to bring the claim under.  As such, Defendants apply the law of the forum state to assess this claim, which Plaintiffs did not dispute in their response to Defendants' pre-motion letter.  *See* ECF No. 29 at 6.

*Enter. Sojuzplodoimport* v. *Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010). "[T]he New York Court of Appeals has made clear that 'unjust enrichment is not a catchall cause of action to be used when others fail.'" *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (quoting *Corsello*, 967 N.E.2d at 1185). Plaintiffs cannot maintain an unjust enrichment claim simply by pleading it "in the alternative" while "simultaneously alleging the existence of an express contract covering the same subject matter." *Gianascio* v. *Giordano*, No. 99 CV 1796 GBD, 2003 WL 22999454, at *5 (S.D.N.Y. Dec. 19, 2003); *In re Columbia Tuition Refund Action*, 523 F. Supp. at 430 (collecting cases). Here, there can be no dispute that a contractual relationship governed the alleged transactions—i.e., Plaintiffs' purchases of juice products from Joe & The Juice—that formed the basis of Plaintiffs' alleged injury, and Plaintiffs nowhere allege that they lack an adequate remedy at law for their injury; to the contrary, they affirmatively plead an express warranty claim and seek monetary damages for that and other claims. FAC ¶¶ 91, 117, 138.

*Second*, even if the unjust enrichment claim is an available cause of action (it is not), Plaintiffs still fail to meet their burden of pleading the claim—which is premised on fraudulent acts, *see, e.g.*, FAC ¶ 10 (alleging "olive oil fraud")—with the requisite Rule 9(b) particularity, *see Goldemberg*, 8 F. Supp. 3d at 483. As discussed above, the FAC lacks basic factual information about Plaintiffs' alleged transactions.. *See supra* Argument Sections II.B., III.A. Nor does the FAC allege—beyond conclusory and boilerplate assertions—why "equity and good conscience require restitution." *Beth Israel Med. Ctr.* v. *Horizon Blue Cross and Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006).

## V.    ANY CLAIMS BROUGHT UNDER MINNESOTA AND WASHINGTON, D.C. LAWS SHOULD BE DISMISSED

Plaintiffs' claims brought under the express warranty laws and consumer protection statutes of Minnesota and Washington, D.C. are subject to dismissal for the additional reason that there is no named Plaintiff who can recover under the laws of these two jurisdictions. The FAC does not allege that any Plaintiffs are residents of or made any purchase in these two jurisdictions. *See* FAC ¶¶ 16–21. As a result, it does not plead any "transactions bearing an appropriate relation to" these jurisdictions, *see* D.C. Code Ann. § 28:1-301(b); Minn. Stat. § 336.1-301(b), which means no named Plaintiffs have standing to bring claims under these express warranty laws, *see Barron* v. *Snyder's-Lance, Inc.*, No. 13-62496-CIV, 2015 WL 11182066, at *2 (S.D. Fla. Mar. 20, 2015) (holding that no named plaintiffs had standing to prosecute the Minnesota express warranty claim because none of them purchased defendant's products in Minnesota); *Heller* v. *Buchbinder*, 399 A.2d 850, 855 (D.C. 1979) (explaining that D.C.'s U.C.C. applies only where "a transaction bears an appropriate relation to the District of Columbia," such as when a sale was "made in the District," "delivered in the District," with "proceeds of the sale garnished in the District by a sales representative doing business in the District" (cleaned up)). Similarly, because the consumer protection statutes of these two jurisdictions do not apply extraterritorially, no Plaintiffs are entitled to recover under these statutes either. *See, e.g.*, *Williams* v. *Total Life Changes, LLC*, No. CV 20-2463 (MJD/HB), 2021 WL 2592385, at *5 (D. Minn. June 24, 2021) (explaining that "generally, Minnesota consumer statutes do not apply extraterritorially" (citation modified)); *Zuckman* v. *Monster Bev. Corp.*, 958 F. Supp. 2d 293, 299 & n.1 (D.D.C. 2013) (explaining "it is far from clear that the DCCPPA would allow recovery for [products] purchased [out-of-state]").

Because no named Plaintiffs claimed that they made any purchase in these two jurisdictions, none of them can represent the putative "Minnesota Subclass" and "Washington, DC

Subclass," which are each comprised of "[a]ll consumers who purchased the Products" in the respective jurisdictions. FAC ¶ 65. The lack of subclass representatives makes it "facially implausible" that the claims brought on behalf of these subclasses could satisfy the Rule 23 requirements for class certification, and any claims brought on their behalf should therefore be dismissed. *See Jones* v. *Goord*, 435 F. Supp. 2d 221, 233 (S.D.N.Y. 2006) (dismissing claims on behalf of subclasses for lack of any named plaintiffs to represent the subclasses); *Jung* v. *Gina Grp., LLC*, No. 19-CV-8624, 2020 WL 3640048, at *4 (S.D.N.Y. July 6, 2020) ("The Court may dismiss class claims at [the pleading] stage only where it is facially implausible that the plaintiff could, after discovery, meet the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation.").

## VI. PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED

Plaintiffs seek to "enjoin[] [Defendants] from inaccurately describing, labeling, marketing, and promoting the Products in the future" under the N.Y. GBL, FAC ¶ 110, but fail to allege any "imminent," "non-speculative" future injury sufficient to confer Article III standing for injunctive relief, *All. for Hippocratic Med.*, 602 U.S. at 381. The FAC lacks any factual allegations as to how or why Plaintiffs would be at risk of future harm absent injunctive relief. Instead, it contains only two conclusory, boilerplate assertions that Defendants' conduct is "likely to continue to deceive and mislead," FAC ¶ 59, and that "all consumers purchasing the Products . . . continue to be exposed to Defendants' material misrepresentations," *id.* ¶ 127.

Such allegations are insufficient to confer standing for injunctive relief. Even assuming, arguendo, that Plaintiffs had indeed been injured by Joe & The Juice's alleged use of the oil blend, they cannot plausibly claim they will be injured again in the future by the same alleged deception. It is well-settled that a purported past injury based on a lack of knowledge cannot occur twice: it eradicates the likelihood of future injury predicated on the same conduct. *See, e.g.*, *Berni* v. *Barilla*

*S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020) (plaintiffs who "ha[d] been deceived by the product's packaging once" would not be deceived again when making future purchase); *Vaccariello* v. *XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (no standing where plaintiff was "now keenly aware of" defendant's practices and policies and therefore "very unlikely" to be deceived again); *Davis* v. *Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) ("Because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them." (citation modified)).  Moreover, nowhere in the FAC do Plaintiffs allege any concrete plan to purchase any juice products from Joe & The Juice again, which renders any alleged future deception entirely conjectural, *see Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 564 n.2 (1992) (no injury where "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control"); *Patellos* v. *Hello Prods.*, *LLC*, 523 F. Supp. 3d 523, 538 (S.D.N.Y. 2021) (finding that the "[alleged] harms are too conjectural to give plaintiffs standing to enjoin future sales of the products at issue" where plaintiffs made only "retrospective allegations" that "do not logically support injunctive relief").

## CONCLUSION

For the reasons set forth above, Joe & The Juice's motion to dismiss should be granted.

Dated: October 17, 2025                    Respectfully submitted,


                                           PAUL, WEISS, RIFKIND,
                                           WHARTON & GARRISON LLP

                                           */s/ Jessica S. Carey*
                                           Jessica S. Carey
                                           Staci Yablon
                                           Xinshu Sui
                                           Eric E. Stern
                                           1285 Avenue of the Americas
                                           New York, New York 10019-6064
                                           (212) 373-3000
                                           jcarey@paulweiss.com
                                           syablon@paulweiss.com
                                           xsui@paulweiss.com
                                           eestern@paulweiss.com

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1. I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 7,489 words.


*/s/ Jessica S. Carey*
Jessica S. Carey