**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NEDA ANSARI, MALCOLM BROOKS, VY LE, ANNABELLE PULVER, USRA SALIM, and DANA WHITTEN, *on behalf of themselves and all others similarly situated*,<br><br>                          Plaintiffs,<br><br>v.<br><br>JOE & THE JUICE NEW YORK LLC and JOE & THE JUICE US HOLDINGS, INC.<br><br>                          Defendant. | Case No. 1:25-cv-04643-PKC<br><br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD .................................................................................................. 4

ARGUMENT .............................................................................................................. 5

I. Plaintiffs' Express Warranty Claims Are Adequately Pleaded ................................... 5

      A.   Plaintiffs Provided Sufficient Pre-Suit Notice ................................................ 5

      B.   Plaintiffs Plausibly Allege Breach of Express Warranty ............................... 9

II.      Plaintiffs Plausibly Allege Their GBL Claims .................................................11

      A.   Plaintiffs Properly Allege That NY's GBL Applies To The Nationwide Class ......... 12

      B.   GBL Claims Are Not Subject to Heightened Pleading Standards ............................ 14

III.     Plaintiffs Sufficiently Allege Their Alternative Consumer Protection Claims ................ 14

IV.     Plaintiffs' Alternative Unjust Enrichment Claim Is Adequate ......................................... 18

V.     Defendants' Efforts to Strike Plaintiffs' Class Allegations Are Premature ...................... 18

CONCLUSION.............................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) ............................................................................. 4, 5

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010) .................................................................. 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................... 4

*Avola v. La.-Pac. Corp.*,
    No. 11-CV-4053 (PKC), 2013 WL 4647535 (E.D.N.Y. Aug. 28, 2013)................... 9

*Barnet v. Drawbridge Special Opportunities Fund LP*,
    No. 14-CV-1376 PKC, 2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014)..................... 18

*Basso v. New York Univ.*,
    No. 16-CV-7295-VMKNF, 2018 WL 2694430 (S.D.N.Y. June 5, 2018) ................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................. 5

*Clemmons v. Upfield US Inc.*,
    667 F. Supp. 3d 5 (S.D.N.Y. 2023) .......................................................................11

*Cline v. TouchTunes Music Corp.*,
    211 F. Supp. 3d 628 (S.D.N.Y. 2016).................................................................. 12

*Collins v. Minn. Sch. of Bus., Inc.*,
    636 N.W.2d 816 (Minn. App. 2001), *aff'd* 655 N.W.2d 320 (Minn. 2003)............. 17

*Colpitts v. Blue Diamond Growers*,
    527 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................................ 14, 15

*Cruz v. FXDirect Dealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) .......................................................................... 12, 13

*Devey v. Big Lots, Inc.*,
    635 F. Supp. 3d 205 (W.D.N.Y. 2022) ................................................................ 12

*Duchimaza v. Niagara Bottling, LLC*,
    619 F. Supp. 3d 395 (S.D.N.Y. 2022) .................................................................... 8

*Duran v. Henkel of Am., Inc.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) ................................................. 14

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ................................................... 9, 11

*Gorbaty v. Wells Fargo Bank, N.A.*,
    No. 10-cv-3291 (NGG) (SMG), 2014 WL 4742509 (E.D.N.Y. Sept. 23, 2014) .................... 13

*Goshen v. Mutual Life Insurance Co. of New York*,
    98 N.Y.2d 314 (2002) ................................................................. 12

*Greene v. Gerber Prods. Co.*,
    262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................. 20

*Harnage v. Lightner*,
    916 F.3d 138 (2d Cir. 2019) ......................................................... 14

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-MD-2413 RRM RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ................... 7

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019) ............................................... 13

*In re U.S. Foodservice Inc. Pricing Litig.*,
    729 F.3d 108 (2d Cir. 2013) ......................................................... 18

*Jackson v. Dole Packaged Foods, LLC*,
    648 F. Supp. 3d 1039 (S.D. Ill. 2022) ............................................. 10

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013) ............................................... 13

*Keiler v. Harlequin Enters. Ltd.*,
    751 F.3d 64 (2d Cir. 2014) .......................................................... 14

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) ................................................................ 11

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014) ............................................... 11

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
    897 F.3d 88 (2d Cir. 2018) ....................................................... 18, 19

*Levin v. Gallery 63 Antiques Corp.*,
  No. 04-CV-1504, 2006 WL 2802008 (S.D.N.Y. Sept. 28, 2006)............................................. 7, 8

*Levy v. Hu Prods. LLC*,
  No. 23 CIV. 1381 (AT), 2024 WL 897495 (S.D.N.Y. Mar. 1, 2024) .........................................11

*Lugones v. Pete & Gerry's Organic, LLC*,
  No. 19 Civ. 2907 (KPF), 440 F. Supp. 3d 226 (S.D.N.Y. Feb. 21, 2020) ................................ 14

*MacNaughton v. Young Living Essential Oils, LC*,
  67 F.4th 89 (2d Cir. 2023) ......................................................................................................... 16

*Maroney v. Woodstream Corp.*,
  695 F. Supp. 3d 448 (S.D.N.Y. 2023) ...................................................................................... 6, 7

*Miami Prods. & Chem. Co. v. Olin Corp.*,
  546 F. Supp. 3d 223 (W.D.N.Y. 2021) ...................................................................................... 17

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*,
  962 F. Supp. 2d 514 (S.D.N.Y. 2013) ......................................................................................... 3

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*,
  102 F.3d 660 (2d Cir. 1996) ....................................................................................................... 18

*Oettle v. Walmart, Inc.*,
  685 F. Supp. 3d 706 (S.D. Ill. 2023) ............................................................................................ 7

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) .......................................................................................................11

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019) ......................................................................................................... 4

*Patane v. Nestle Waters N. Am., Inc.*,
  No. 3:17-CV-1381 (VDO), 2025 WL 1633967 (D. Conn. June 9, 2025)................................ 5, 7

*Patellos v. Hello Prod., LLC*,
  523 F. Supp. 3d 523 (S.D.N.Y. 2021) ......................................................................................... 8

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005) ....................................................................................................... 14

*Reyes v. Upfield US Inc.*,
  694 F. Supp. 3d 408 (S.D.N.Y. 2023) ....................................................................................... 19

*Reynolds-Sitzer v. EISAI, Inc.*,
    586 F. Supp. 3d 123 (N.D.N.Y. 2022)................................................................. 16

*Schneider v. Colgate-Palmolive Co.*,
    677 F. Supp. 3d 91 (N.D.N.Y. 2023)................................................................. 16

*Tomasino v. Estee Lauder Companies, Inc.*,
    No. 13-CV-4692, 2015 WL 4715017 (E.D.N.Y. Aug. 7, 2015) ................................. 7

*Tomasino v. Estee Lauder Cos. Inc.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014)) ............................................................... 7

*Travis v. Navient Corp.*,
    460 F. Supp. 3d 269 (E.D.N.Y. 2020) ......................................................... 19, 20

*v. Pfizer, Inc.*,
    No. 16CV06941LTSBCM, 2017 WL 6988936 (S.D.N.Y. Dec. 27, 2017), *report and
    recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018).................... 8

*Voronina v. Scores Holding Co., Inc.*,
    No. 16-cv-2477, 2017 WL 74731 (S.D.N.Y. Jan. 5, 2017) .................................. 13

**Rules**

Fed. R. Civ. P. 8................................................................................ 14, 15, 18
Fed. R. Civ. P. 9................................................................................ 14, 16
Fed. R. Civ. P. 12............................................................................... 4, 15, 19
Fed. R. Civ. P. 23............................................................................... 18

**Regulations**

75 Fed. Reg. 22363 § 52.1531(a).................................................................. 2
N.Y. Comp. Codes R. & Regs. tit. 1, § 269.1(a)(1) ............................................. 3

**Statutes**

Minn. Stat. § 8.31 subd. 3a ...................................................................... 17

**Other Authorities**

IOC Trade Standard, COI/T.15/NC No 3/Rev. 6 § 2.2 (Nov. 2011) ............................. 3
N.Y. Agric. & Mkts. Law §§ 199–a(1)............................................................. 3
N.Y. Gen. Bus. Law § 349 ....................................................................11, 12, 13, 14
N.Y. Gen. Bus. Law § 350 ....................................................................11, 14
N.Y. U.C.C. § 2-313(1)(a)......................................................................... 9
N.Y. U.C.C. § 2-607.............................................................................. 6, 7

Plaintiffs Neda Ansari, Malcolm Brooks, Vy Le, Annabelle Pulver, Usra Salim, and Dana Whitten (collectively, Plaintiffs) submit the instant memorandum in opposition to Defendants Joe & the Juice New York LLC and Joe & the Juice US Holdings, Inc.'s (collectively, Joe & the Juice or Defendants) Motion to Dismiss Plaintiffs' Amended Class Action Complaint (Motion), ECF Nos. 31–33, on behalf of themselves and the putative classes.

## INTRODUCTION

This case relates to one, simple premise: olives are not rape seeds; each come from a different plant, are grown in different ways, have different tastes, purposes, and health effects, and each produce different oils; olives produce olive oil while rape seeds produce canola oil. Yet for well over a year – and even in their Motion to Dismiss – Defendants intentionally conflated the two. But "olive oil" is well defined by trade and industry groups, as well as by law and regulations. Defendants' Motion attempts to hide the ball through false analogies and disingenuous conflations. But, despite Defendants' efforts to mischaracterize this case, this is not a deceptive labeling action. Rather, Plaintiffs' allegations are far simpler: Joe & the Juice lied about the ingredients it uses in its products. It provided consumers with an exhaustive list of ingredients, which listed an ingredient that was not included in its juices (olive oil), and failed to disclose a cheaper ingredient that it used instead (canola oil). Plaintiffs and class members relied on these representations and paid a price premium as a result.

Joe & the Juice's use of a canola oil-blend rather than olive oil is deceptive, unscrupulous conduct designed to maximize profits at consumers' expense. It must not be countenanced. As such, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

1

## BACKGROUND

For years, Joe & the Juice built its brand around a simple promise: its products embodied the company's self-proclaimed "movement" toward "healthy living," transparency, and high-quality, natural ingredients. Am. Compl. ¶¶ 2–4. Joe & the Juice differentiated itself from other fast-food chains by positioning itself as a healthy lifestyle brand – assuring consumers that every juice, shake, and sandwich was made with "high-quality, natural, and organic ingredients" and that customers could trust the ingredients listed on Joe & the Juice's menus, apps, and marketing materials. *Id.* Joe & the Juice even touted a "Manifest" in which they professed their commitment to nutrition, authenticity, and the integrity of the ingredients they serve. *Id.* Plaintiffs – and thousands of consumers nationwide – trusted and paid a premium because of that promise.

But while Joe & the Juice advertised its juices as containing "olive oil," a premium, antioxidant-rich ingredient widely understood to confer substantial health benefits, it was lying. *Id.* at ¶¶ 34–38. Public reports revealed that Joe & the Juice's purported "olive oil" was, in fact, an inexpensive, unhealthy, highly processed oil blend composed of approximately 95% canola oil – an ingredient Joe & the Juice did not disclose anywhere on their in-store menus, app menus, ingredient lists, or marketing materials. *Id.* at ¶¶ 39–47.

Federal, state, and industry labeling standards define olive oil virtually synonymously and demand proper labeling. According to the U.S. Standards for Grades of Olive Oil and Olive-Pomace Oil, promulgated by the U.S. Department of Agriculture, "Olive oil is the oil obtained solely from the fruit of the olive tree (*Olea europaea L.*), to the exclusion of oils obtained using solvents or re-esterification processes and of any mixture with oils of other kinds" and must meet specific requirements. 75 Fed. Reg. 22363 § 52.1531(a). The United Nation's International Olive Council similarly provides that "[o]live oil is the oil obtained solely from the fruit of the olive tree

2

. . . to the exclusion of oils obtained using solvents or re-esterification processes."  IOC Trade Standard, COI/T.15/NC No 3/Rev. 6 § 2.2 (Nov. 2011).[1]  Therefore, Joe & the Juice's canola oil-blend is definitionally not olive oil.[2]

Yet Joe & the Juice uniformly labeled its canola oil concoction as "olive oil" across all menus and platforms nationwide.  Am. Compl. ¶ 6.  Plaintiffs could not have known about this swindling absent scientific testing that no reasonable consumer could or would perform at the point of purchase.  *Id.* at ¶¶ 45–46.  Joe & The Juice, however, controlled its supply chain and recipe formulations and thus had exclusive knowledge that the juices did not contain the ingredients it prominently represented and touted.  *Id.* at ¶¶ 53–56.

Consumers reasonably rely on ingredient lists – particularly when purchasing products marketed as "healthy" – and Plaintiffs were no exception.  Each Plaintiff reviewed Joe & the Juice's ingredient lists before purchasing and believed the representations to be complete and truthful.  *Id.* at ¶¶ 16–24.  Plaintiffs purchased the juices at a premium, because they believed the juices contained olive oil and did not contain a wholly distinct, highly processed ingredient in its place.  *Id.*; *id.* at ¶¶ 60–61.  Joe & the Juice's affirmative misrepresentations and omissions

---

[1] Industry groups, such as the North American Olive Oil Association and Olive Oil Council, dictate that "products claiming to be 'olive oil' cannot have other oils in their composition; olive oil must be extracted solely from olives and cannot be mixed with any other types of seed, vegetable, or nut oils."  Am. Compl. ¶ 7.  Likewise, New York law defines "olive oil" as "the olive oil obtained solely from the fruit of the olive tree (Olea Europaea L.) without the use of solvents or re-esterification processes."  N.Y. Comp. Codes R. & Regs. tit. 1, § 269.1(a)(1).  "New York law deems any product or label that fails to conform to these definitions 'adulterated' or 'misbranded,' and thus unlawful."  *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 519 (S.D.N.Y. 2013) (citing N.Y. Agric. & Mkts. Law §§ 199–a(1), 200, 201).

[2] This is much like sparkling wine from regions other than the Champagne region of France, which are definitionally not champagne.

deprived Plaintiffs of the benefit of their bargain, caused them to pay inflated prices, and resulted in the purchase of juices worth substantially less than what was promised. *Id.* at ¶¶ 60–61.

Joe & the Juice's conduct was a years-long, nationwide deception. The design and implementation of this deception (*e.g.*, ingredient purchases, financial decisions, and misrepresentations) all originated from Joe & the Juice's New York headquarters and were disseminated uniformly across more than 65 U.S. locations and multiple sales channels, inducing consumers nationwide to purchase juices under false pretenses. *See* Am. Compl. at ¶¶ 1, 25–29. Joe & the Juice's affirmative misrepresentation that its juices contain olive oil and its failure to disclose its use of canola oil was material, deceptive, and unlawful, violating state consumer protection laws, express warranty obligations, and fundamental principles of fairness. Plaintiffs, individually and on behalf of the proposed class(es), now seek to hold Joe & the Juice accountable for this systematic and lucrative deception on the public.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In assessing the sufficiency of a pleading, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court is instructed to "construe the complaint liberally," to "accept[] all factual allegations in the complaint as true," and to "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (brackets and internal quotation marks omitted).

"The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Anderson News, L.L.C. v. Am.*

4

*Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). "A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks omitted).

## ARGUMENT

### I.    Plaintiffs' Express Warranty Claims Are Adequately Pleaded

#### A.    Plaintiffs Provided Sufficient Pre-Suit Notice

Prior to filing of their initial Complaint, Plaintiffs sent Defendants a pre-suite notice, in which they detailed Joe & the Juice's misrepresentations, explained how they had been misled by Joe & the Juice's improper conduct, and described how Joe & the Juice's misrepresentations injured consumers nationwide. However, in its Motion, Defendants erroneously claim that Plaintiffs' pre-suit notice did not adequately apprise them of Plaintiffs' claims and, thus, Plaintiffs are foreclosed from proceeding with their breach of express warranty claim. Mtn. at 7–10. Defendants' position is at odds with both recent case law and a fair reading of Plaintiffs' notice letter, which provided specific, prompt notice on behalf of a nationwide class. Despite its reference to Plaintiffs' New York General Business Law (GBL) claims, Plaintiffs' letter notice (ECF No. 33–2) satisfies all pre-suit notice requirements, including for Plaintiffs' express warranty claims.

Judge Oliver's recent Order Denying Reconsideration in *Patane v. Nestle Waters N. Am., Inc.* is instructive. In *Patane*, a letter "sent by one of Plaintiffs' attorneys on behalf of one of the plaintiffs [] and a putative class to Nestlé – had notified the company that Russell believed [a product] was deceptively labeled." No. 3:17-CV-1381 (VDO), 2025 WL 1633967, at *6 (D. Conn. June 9, 2025) (internal quotation marks omitted). Notably, "the letter and draft complaint (1) did

not specifically mention a breach-of-contract claim and thus did not allege a set of facts that would

'constitute a breach' of a contract and (2) were not mailed on behalf of either Harrigan or Shapiro

but were instead sent on behalf of another plaintiff (Russell) who had not purchased water directly

from Nestlé and therefore could not notify Nestlé of any 'buyer's claim.'  U.C.C. § 2-607(3)(a)."

*Id.* at *7.  Denying arguments analogous to those raised by Defendants here, the court examined

UCC § 2-607(3)(a)'s pre-suit notice requirement and reaffirmed that a letter stating that the product

was "deceptively labeled" was sufficient to satisfy the UCC's pre-suit notice requirement.   In

pertinent part, the court explained:

> Judge Meyer was clearly correct that the letter "provided Nestlé with ample notice
> of the core of plaintiffs' claims[.]"  And where that notice has been provided, it is
> not Plaintiffs' task to perform the work of Nestlé's counsel and lay out every
> potentially viable theory of relief in specific.  As Comment Four states, the
> notification need only let the seller know that the transaction is "troublesome" – it
> need not "include a clear statement of all objections."  U.C.C. § 2-607 cmt. 4.  In
> fact, the notice need not even include "a claim for damages" or "of any threatened
> litigation[.]"  *Id.*  It cannot be that a notice need not threaten litigation but must
> specifically denote a claim for breach of contract.[]  A customer notifying a
> company that a transaction is "troublesome and must be watched" suffices without
> more.
> . . .
> The Court concludes that Nestlé was well aware of the general allegation and that
> it was but a short jump for Nestlé to acknowledge that its contracts with consumers
> were implicated through this theory.  The Court, therefore, rejects the argument that
> the Russell Letter needed to address the breach-of-contract claim more specifically,
> and it concludes that the letter put Nestlé on notice of the core of Plaintiffs' claims.

*Id.*  Given the low threshold for notice, it is unsurprising that, as here, "Defendant[s] cite[] to no

case supporting the assertion that the *notice* to a defendant must itself specify when a product was

purchased or used."  *Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 467–68 (S.D.N.Y. 2023)

(holding, "the 'notice required to preserve [the] right to sue for damages need only alert [the

prospective defendant] that the transaction [was] troublesome.'" (quoting *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014))). [3]

Here, Plaintiffs – individually and on behalf of the putative nationwide class – provided unequivocal notice, identifying both Defendants' "troublesome" conduct and the "core of plaintiffs' claims[:]" Joe & the Juice was lying to customers about the ingredients in its juices. *Patane*, 2025 WL 1633967, at *6.

Finally, Defendants' contentions that Plaintiffs failed to provide timely notice is likewise unpersuasive. Mtn. at 7–8, 8 n.3. Contrary to Defendants' cited timeliness case law – the most recent of which was decided in 1949, approximately three years before the UCC was first promulgated – the rule regarding what constitutes "'[a] reasonable time' for *notification from a retail consumer . . .* is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Maroney*, 695 F. Supp. 3d 466 (emphasis original) (quoting *Tomasino v. Estee Lauder Companies, Inc.*, No. 13-CV-4692, 2015 WL 4715017, at *3 (E.D.N.Y. Aug. 7, 2015) (citing N.Y. U.C.C. § 2-607 cmt. 4)). "Comment 4 reflects the view that the consumer quite often will take longer to appreciate the nature of a breach and to realize the seller may be liable for it." *Id.* at 466–67 (quoting *Tomasino*, 2015 WL 4715017, at *3); *accord Levin v. Gallery 63 Antiques Corp.*, No. 04-CV-1504, 2006 WL 2802008, at *19 (S.D.N.Y. Sept. 28, 2006) ("A

---

[3] *Oettle v. Walmart, Inc.* does not dictate that Plaintiff Salim cannot allege express warranty because she was not explicitly mentioned in the notice letter. Mtn. at 7. In that case, the court held that "a nondescript letter from an unidentified source complaining of an unidentified problem with a product" in insufficient notice, not that every named plaintiff must provide notice nor that particular individuals cannot provide notice on behalf of a class. 685 F. Supp. 3d 706, 711 (S.D. Ill. 2023). The notice discussed in *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *27–29 (E.D.N.Y. Aug. 29, 2013), appears to have been similarly ambiguous, and was only cursorily discussed and admittedly in dicta. The notice and facts here are more akin to those of *Patane*, albeit stronger because the notice here (ECF No. 33–2) included all other Plaintiffs and the nationwide class (which includes Plaintiff Salim).

'reasonable time' for notification from a retail consumer 'is to be judged by different,' more lenient, standards than those applied to merchant or commercial buyers."). Given the lenient standard in the instant consumer context, a few months (at most) between learning of the unlawful conduct and providing notice to Defendants is more than reasonable. *See, e.g.*, *Patellos v. Hello Prod., LLC*, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021) (holding that the "SAC adequately pleads that notice seven months after purchase was reasonably timely, insofar as the defect that [plaintiff] claims was one that, by its nature, became apparent not immediately but over time").

Here, Plaintiffs learned of the breaches following public reports first made in late-December 2024 and, by early-April 2025, sent a notice their letter. *See* Am. Compl. ¶¶ 47, 105.[4] Defendants do not attempt to claim that they were prejudiced nor do they explain why the court should ignore the manifest weight of caselaw (from this jurisdiction) since 1949.[5] To the extent timeliness may appear unreasonable (which is not the case here), it is a matter of fact for the jury. *Levin*, 2006 WL 2802008, at *19 (holding that timeliness was a "question better resolved by a jury,

---

[4] Setting aside its cynical implications that retailers cannot be expected to comply with their ingredient representations to consumers, Defendants' contention that Plaintiffs could have learned about the misrepresentations earlier by asking staff members to verify the ingredients put in the juices they order is unprecedented.

[5] Defendants' cited case law does not dictate otherwise. Mtn. at 7–10. In *Tyman v. Pfizer, Inc.*, unlike here, the court held that notice was insufficient because "plaintiffs are silent as to when they purchased the Chapstick Products. They are equally silent as to when they discovered or should have discovered the alleged breach of warranty." No. 16CV06941LTSBCM, 2017 WL 6988936, at *23 (S.D.N.Y. Dec. 27, 2017), *report and recommendation adopted*, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018). Similarly, in *Duchimaza v. Niagara Bottling, LLC*, the court held that, "[f]atal to this claim, the FAC does not plead when Duchimaza learned of the alleged falsity of Niagara's '100% Recyclable' claim," whereas here Plaintiffs state that they learned of the deception following public reports that were only first released in late-December 2024. 619 F. Supp. 3d 395, 418 (S.D.N.Y. 2022). Also, in contrast to the cases Defendants reference, Plaintiffs' pre-suit notice clearly set forth the offending conduct, which, again, is rather straightforward. ECF No. 33-2 (describing Joe & the Juice's use of canola oil instead of olive oil nationwide, despite representing otherwise, causing consumers to pay a price premium).

especially in light of the fact that there has been no showing of substantial prejudice to Defendants").

Thus, Plaintiffs provided sufficient pre-suit notice.

### B.    Plaintiffs Plausibly Allege Breach of Express Warranty

Under the UCC and state adoptions thereof, an express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." *See, e.g.*, NYUCC § 2-313(1)(a).  To state a breach of express warranty claim, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."  *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (collecting cases). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Id.* (quoting *Avola v. La.-Pac. Corp.*, No. 11-CV-4053 (PKC), 2013 WL 4647535, at *6 (E.D.N.Y. Aug. 28, 2013)).  Courts across the country agree that food labels and descriptions create an express warranty.  *See, e.g.*, *Goldemberg*, 8 F. Supp. 3d at 482–83 (S.D.N.Y. 2014) (holding that, by labeling products as "Active Naturals," the defendant promised that the products were free of synthetic materials).

Joe & the Juice's ingredients lists constitute a verifiable affirmation of fact – namely that its juices contain "olive oil" – and are thus an express written warranty. Am. Compl. ¶ 79. Joe & the Juice made these statements on all iterations of its menus knowing and intending that consumers are willing to pay a price premium for healthy products.  *Id.* at ¶¶ 2–6.  Plaintiffs all

materially relied on Joe & the Juice's affirmations of fact regarding the exhaustive list of ingredients included when deciding to purchase the juices. *Id.* at ¶¶ 16–24.

But, despite this written warranty, the products do not contain olive oil, but rather something literally distinct, thereby constituting a breach. *Id.* at ¶ 81. Plaintiffs and class members were injured by the price premiums they paid based on Joe & the Juice's false warranty. *Id.* at ¶ 91. Joe & the Juice further breached its express warranty by omission by providing what a reasonable consumer would believe is an exhaustive list of ingredients – going so far as to list "ice" as a juice ingredient – yet failed to mention its use of canola oil. *Id.* at ¶ 34. *See, e.g.*, *Jackson v. Dole Packaged Foods, LLC*, 648 F. Supp. 3d 1039, 1047 (S.D. Ill. 2022) (holding that a reasonable customer would read "100% fruit juice" to represent an exhaustive ingredients list and that there are no further additives in the food (as Plaintiffs and the class would reasonably expect based on Joe & the Juice's ingredients representations here)).[6]  Thus, Plaintiffs have sufficiently alleged a breach of Defendants' express warranty.

---

[6] The case law Defendants reference is readily distinguishable. Mtn. at 10–12. For instance, in *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021), this Court held that "[t]he express warranty claim fails as Westbrae's product does not state it is made exclusively with natural vanilla and a reasonable consumer would not interpret the representation of 'Vanilla Soymilk' to make this claim." Here, a reasonable customer would understand a seemingly exhaustive list of ingredients to be accurate and complete. *In re Gen. Mills Glyphosate Litig.* is also inapt because that case concerned the presence of trace ingredients, not undisclosed ingredients that the manufacturer affirmatively added. No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *7 (D. Minn. July 12, 2017) ("The product packaging states 'Made with 100% Natural Whole Grain Oats.' And there is no dispute that the Products were made with whole grain oats that, themselves, are '100% Natural.' Even if the glyphosate traces are present on the oats, there is no allegation that the oats, themselves, are not natural.").

Defendants' reliance on *Kamara* is curious because the Court's reasoning in that case militates in Plaintiffs' favor here. The Court explained that "courts have concluded that a plaintiff has plausibly alleged a deceptive statement where packaging falsely states or implies that a prominently mentioned ingredient predominates, when, in fact, that ingredient is secondary." *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 78 (S.D.N.Y. 2021). The Court ultimately dismissed the plaintiff's case because "the packaging accurately indicated that the product

## II.    Plaintiffs Plausibly Allege Their GBL Claims

To assert a claim under either GBL §§ 349 or 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)).  Here, Plaintiffs state that they and the class relied on Joe & the Juice's ingredient representations during the class period[7] and would not have paid as much for Joe & the Juice's juices had they known that its representations regarding its ingredients were false.[8]  Plaintiffs and the class therefore paid a price premium and did not receive the benefit of their bargain.  *See, e.g.*, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288–89 (S.D.N.Y. 2014) (finding a sufficiently-pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Clemmons v. Upfield US Inc.*, 667 F. Supp. 3d 5, 18 (S.D.N.Y. 2023) (Castel, J.) (sustaining GBL claims where "The Complaint plausibly alleges

---

[7] Unlike *Basso v. New York Univ.*, No. 16-CV-7295-VMKNF, 2018 WL 2694430, at *2 (S.D.N.Y. June 5, 2018), wherein "[t]he plaintiffs concede in their reply that their GBL §§ 349 and 350 causes of action are outside of the statute of limitations," Plaintiffs here pleaded that they made their purchases and were deceived during the applicable statute of limitations period.  Am. Compl. ¶¶ 15–21.

[8] To the extent that Defendants appear to argue that a reasonable consumer would understand "olive oil" to mean a 95% canola oil-blend, that is definitionally inaccurate and – at best – an issue of fact and must be left to a jury to determine.  *See, e.g.*, *Levy v. Hu Prods. LLC*, No. 23 CIV. 1381 (AT), 2024 WL 897495, at *7 (S.D.N.Y. Mar. 1, 2024) ("However, as the Court is unable to determine as a matter of law that the statements are not misleading under [the General Business Law], it is equally inappropriate to determine they are not misleading for the warranty claim." (quoting *Goldemberg*, 8 F. Supp. 3d at 483)).

The footnote reference above the footnotes reads: contained butter, and the ingredients list confirmed that butter predominated over other oils and fats," and therefore "the Complaint does not plausibly allege a breach of any material statement about the crackers' butter content." *Id.* at 78, 80.  Even if this were a labeling case (it is far simpler), a 95% canola oil-blend that is definitionally not "olive oil" certainly does not satisfy this Court's standard.

that the front of the Product's packaging uses the phrase 'Made With Olive Oil,' thereby implying that olive oil is an ingredient and at least a predominant one") (collecting cases).[9]

### A.     Plaintiffs Properly Allege That NY's GBL Applies To The Nationwide Class

Defendants argue that under *Goshen v. Mutual Life Insurance Co. of New York*, 98 N.Y.2d 314 (2002), the GBL cannot apply extraterritorially and therefore such claims must fail with respect to Plaintiffs and class members who did not purchase juices in New York.  Mtn. at 12–14. But there is ample case law within the Second Circuit to the contrary, holding that extraterritorial conduct emanating from New York or with New York connections may be prosecuted under the GBL.  Defendants fail to acknowledge case law that developed after *Goshen*, which relaxed *Goshen*'s seemingly rigid territorial rule, and the Court should accordingly reject this argument.

In *Cruz v. FXDirect Dealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the Second Circuit recognized that "two divergent lines of decisions have developed since Goshen regarding the proper territorial analysis under § 349."  *Id.* at 123.

> The first line of decisions derives from a statement in *Goshen* that "to qualify as a prohibited act under the statute, the deception must occur in New York. . . . The second line of cases appears to be premised on the assertion in *Goshen* that "the transaction in which the consumer is deceived must occur in New York."  These cases focus on where the underlying deceptive "transaction" takes place, regardless of the plaintiff's location or where the plaintiff is deceived.

*Id.* at 123 (internal citations omitted).  Subsequent courts have explained that the difference between these two tests is that "one [is] based on where the deceptive conduct took place and the other [is] based on where the transaction took place."  *Cline v. TouchTunes Music Corp.*, 211 F.

---

[9] Defendants' reliance on *Devey v. Big Lots, Inc.* is misplaced.  In *Devey*, the court reasoned that the "plaintiff does not specify the dates or sequence of any of those events, nor does she otherwise allege that she saw the Product labeling prior to, or in connection with, any particular purchase, at any particular time or place."  635 F. Supp. 3d 205, 214–15 (W.D.N.Y. 2022).  Plaintiffs here clearly allege that they relied on Joe & the Juice's representations when making their juice purchases.

Supp. 3d 628, 632 (S.D.N.Y. 2016). Courts within the Second Circuit have since ruled that out-of-state plaintiffs may bring GBL claims where deceptive conduct originates in New York but ultimately leads to a deceptive transaction in another state. *See, e.g., Voronina v. Scores Holding Co., Inc.*, No. 16-cv-2477, 2017 WL 74731, at *4 (S.D.N.Y. Jan. 5, 2017) (Kaplan, J.) (permitting GBL's application where deceptive scheme was conceived and implemented in New York but harmed out-of-state plaintiffs, and "discovery may yield more evidence probative of such [New York] connections"); *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-cv-3291 (NGG) (SMG), 2014 WL 4742509, at *15 (E.D.N.Y. Sept. 23, 2014) (denying motion to dismiss where deceptive paperwork for real estate transaction drawn up in New York and closing occurred in New Jersey because the deception allegedly began in New York).

Here, the GBL applies to the non-New York Plaintiffs and nationwide class because Joe & the Juice's unlawful conduct (*e.g.*, menu design and deceptive representations, marketing, and ingredient purchase orders) originated in and emanated from New York. Am. Compl. ¶ 29.[10] Discovery will further fortify the New York connections between the purchases and deceptions at issue. New York has a strong interest in policing this kind of profiteering, both within and emanating from its territorial bounds, and the GBL allows deceived consumers impacted by improper conduct originating in New York to seek legal remedies to vindicate their interests. *See Cruz*, 720 F.3d at 123 (explaining that § 349 examines "the strength of New York's connection to

---

[10] Defendants rely on cases that are unavailing here. Mtn. at 13–14. *In re Fyre Festival Litig.* is inapplicable because, unlike here, the plaintiffs there did not allege that the deception had any connection to New York. 399 F. Supp. 3d 203, 223–24 (S.D.N.Y. 2019) ("the SCAC contains no allegations where plaintiffs purchased tickets or merchandise, where Fyre Media's bank accounts are to collect proceeds from ticket and merchandise sales, whether any contracts with Fyre Media contain provisions implicating New York law, or where customer communications with the company were sent"). *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 469–70 (S.D.N.Y. 2013), does not pertain to the GBL, let alone deception emanating out of New York.

the allegedly deceptive transaction"). Accordingly, the Court should reject Defendants' territorial arguments in support of its motion to dismiss Plaintiffs' GBL claims.

### B. GBL Claims Are Not Subject to Heightened Pleading Standards

Defendants further argue that Plaintiffs' GBL claims must be dismissed because the complaint's allegations do not meet the heightened pleading requirements of Rule 9(b). Mtn. at 14–16. The Court may easily dispatch with that contention because "an action under §349 is not subject to the pleading-with-particularity requirements of Rule 9(b)." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *accord Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) ("Claims under GBL §§ 349 and 350 are not required to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).") (citing *Lugones v. Pete & Gerry's Organic, LLC*, No. 19 Civ. 2907 (KPF), 440 F. Supp. 3d 226, 239–40 (S.D.N.Y. Feb. 21, 2020)). But, even if the Rule 9(b) were to apply, Plaintiffs meet that bar. *See infra* § III.

### III. Plaintiffs Sufficiently Allege Their Alternative Consumer Protection Claims

Much like Defendants' challenges to Plaintiffs' GBL claims, Defendants' assertions that Plaintiffs' allegations fail to satisfy Rule 8's pleading requirements for their alternative consumer protection claims are meritless. Mtn. at 16–18.

Under Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, the complaint must "disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 577 (S.D.N.Y. 2021) (Cronan, J.) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)); *accord Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) ("[T]o survive a motion

14

under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

Plaintiffs' allegations readily satisfy Rule 8's standard. Plaintiffs detail that they purchased particular juices, they did so in reliance on Joe & the Juice's misrepresentations as to the ingredients, the purchases occurred at Joe & the Juice stores in particular cities, and the purchases occurred during the relevant statutes of limitations. Am. Compl. ¶¶ 15–24. Thus, the complaint provides Defendants with ample notice as to Plaintiffs' claims regarding the specific products at issue, where the purchases occurred, whether that purchase occurred within the statute of limitations, and the deceptive practices committed by Defendants, which form the basis for their GBL claims and other state consumer protection statutes. *See Colpitts*, 527 F. Supp. 3d at 577 (holding that similar general allegations were sufficient to meet Rule 8).[11] "Rule 8(a) does not mandate that 'a complaint be a model of clarity or exhaustively present the facts alleged, as long as it gives [the] defendant fair notice of what [the] plaintiff's claim is and the facts upon which it rests.'" *Id.* (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 422 (S.D.N.Y. 2010)). Plaintiffs' complaint has provided sufficient notice as to the claims here.

Defendants further contend that Plaintiffs' alternative state consumer protection claims must be dismissed because they were pleaded together under one cause of action and purportedly without requisite specificity. Mtn. at 16–18. Defendants point to the various elements required by the state consumer protection statutes, Mtn. at 17–18, but conveniently ignore that Plaintiffs allege all such elements ("e.g., scienter, reliance, causation"). *See, e.g.*, Am. Compl. ¶¶ 131 & 134

---

[11] Practically speaking, Defendants also have access to Plaintiffs' and class members purchases, and can look up their respective purchase histories to the extent they seek information beyond those required by the pleading requirements. Notwithstanding, Plaintiffs will produce relevant receipts in their (and their counsel's) possession during discovery.

(scienter), 135 (reliance), and 134–36 (causation).  Thus, unlike the cases which Defendants rely

upon – wherein the plaintiffs simply listed statutes across fifty states with no facts in support of

their claims – Plaintiffs here provide adequate support for their claims throughout the complaint,

which are incorporated by reference, Am. Compl. ¶ 129.  *See* Mtn. at 17–18.[12]

Additionally, to the extent that Plaintiffs' consumer protection claims sound in fraud –

which they do not – or generally implicate a heightened pleading standard, [13] Plaintiffs satisfy Rule

9(b).  "Rule 9(b) 'provides that [i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake.'"  *Schneider v. Colgate-Palmolive Co.*, 677 F.

Supp. 3d 91, 101 (N.D.N.Y. 2023) (quoting *MacNaughton v. Young Living Essential Oils, LC*, 67

F.4th 89, 99 (2d Cir. 2023)).  "Pleading fraud with particularity means specifying the who, what,

when, where, and how [of the fraud]."  *Id.* (quoting *Reynolds-Sitzer v. EISAI, Inc.*, 586 F. Supp. 3d

123, 135 (N.D.N.Y. 2022)).  Plaintiffs explicitly plead that Joe & the Juice (*who*) engaged in

deceptive conduct by misrepresenting and falsely advertising the contents of its juices (*what*) on

its menus in stores, on apps, and online (*where*) during the statute of limitations period (*when*) by

claiming to use oil olive, when in fact it used canola oil (*how*) to reap excessive profits from

consumers.  These allegations are more than sufficient to survive at the motion to dismiss stage

---

[12] Should the Court prefer that Plaintiffs plead these claims as separate causes of action, Plaintiffs respectfully request the Court's consent to amend their complaint to do so.

[13] Defendants' assertion that Plaintiffs' claims 'sound in fraud' (Mtn. at 1, 6, 19) and therefore must comply with Rule 9(b)'s pleading standards is a distortion of Plaintiffs' pleadings.  Defendants' point is purely predicated on Plaintiffs' quoting North American Olive Oil Association, which defines representing impure "olive oils" (*i.e.*, olive oil mixed with any other oils such as seed, vegetable or nut oils) as "olive oil" as constituting a form of "olive oil fraud."  Am. Compl. ¶ 10 (citing *Olive Oil Quality, Olive Oil Purity v Quality*, North American Olive Oil Association, https://www.aboutoliveoil.org/olive-oil-purity-v-quality).  Plaintiffs do not in fact allege fraud in their complaint.

and will be fleshed out further over the course of discovery.  Am. Compl. at ¶¶ 3, 5–6, 9, 15–21, 34–37, 47–62.[14]

Finally, Defendants seek to strike Plaintiffs' Illinois' Uniform Deceptive Trade Practices Act, Minnesota's Uniform Deceptive Trade Practices Act, and Minnesota's Consumer Fraud Act claims because they purportedly do not permit a private cause of action for monetary damages. This is not a basis to dismiss Plaintiffs' claims; rather, Plaintiffs seek injunctive relief forbidding Defendants from engaging in the same or similar misconduct at present and in the future.  *See* Am. Compl., ¶ 110, Prayer for Relief ¶ (h).[15]  Moreover, Defendants are incorrect with respect to Minnesota law.  Under Minnesota's private attorney general statute, where the cause of action benefits the public, Minnesota law provides that, "[i]n addition to the remedies otherwise provided by law, any person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court."  Minn. Stat. § 8.31 subd. 3a.  *See Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 242 (W.D.N.Y. 2021) (collecting cases); *Collins v. Minn. Sch. of Bus., Inc.*, 636 N.W.2d 816, 820 (Minn. App. 2001) (holding that the private attorney general statute permits plaintiffs to bring private monetary claims under both the Deceptive Trade Practices Act and the Consumer Fraud Act), *aff'd* 655 N.W.2d 320 (Minn. 2003).  In light of the public benefit of this

---

[14]    While the Complaint satisfies the requisite pleading requirements, Plaintiffs can provide additional detail, if required, in a further amended complaint.

[15] To the extent that the Court seeks a more detailed factual basis concerning potential future harm to Plaintiffs to support their requests for injunctive relief (with respect to all claims), Plaintiffs respectfully seek leave to amend to elaborate.  (Defendants did not raise this purported deficiency in their pre-motion letters.  ECF Nos. 23, 28.)

action, which is designed to redress and prevent deception of everyday consumers by companies seeking to maximize profits, Plaintiffs are entitled to relief here.

## IV.    Plaintiffs' Alternative Unjust Enrichment Claim Is Adequate

Defendants argue that Plaintiffs' unjust enrichment claim should be dismissed because it is duplicative and inadequately pleaded. Mtn. at 18–19. Not so. "[A] claim for unjust enrichment may be pleaded in the alternative to other claims." *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376 PKC, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014) (Castel, J.) (permitting unjust enrichment claim to proceed in the alternative) (citing Fed. R. Civ. P. 8(a) ("[A] demand for the relief sought . . . may include relief in the alternative or different types of relief."); and *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 663 (2d Cir. 1996) (reversing the dismissal of an unjust enrichment claim and holding that the claim was properly pleaded in the alternative to a contractual claim)). Plaintiffs' complaint, which now explicitly pleads unjust enrichment in the alternative, is therefore sufficient to proceed at this stage. Additionally, for the reasons stated above with respect to Plaintiffs' other claims, Plaintiffs readily plead unjust enrichment with sufficient particularity.

## V.    Defendants' Efforts to Strike Plaintiffs' Class Allegations Are Premature

Defendants seek to strike Plaintiffs' nationwide class allegations, and alternative Minnesota and Washington, DC claims and class allegations, by suggesting that Plaintiffs are inadequate class representatives. Mtn. at 20–21. But "[v]ariations in state laws do not necessarily prevent a class from satisfying the predominance requirement." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 97 (2d Cir. 2018) (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013)). Moreover, Defendants' argument is premature at the motion to dismiss stage, especially given that it implicates various class certification issues, such as

18

predominance.  F.R.C.P. 23.  As the Second Circuit emphasized in *Langan*, "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III."  897 F.3d at 96.[16]  As such, it is procedurally improper to determine whether the various state statutes are sufficiently similar and whether the named plaintiffs are adequate class representatives at this stage.

In *Travis v. Navient Corp.*, for instance, the defendant sought to strike, *inter alia*, the New York plaintiff's nationwide class allegations under Delaware law.  The court denied the motion to strike as premature, explaining:

> [M]otions to strike material solely "on the ground that the matter is impertinent and immaterial" are disfavored.  *Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019).  "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."  *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (internal citations and quotations omitted); *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) (same).  Motions to strike class allegations at the motion-to-dismiss phase are therefore "[g]enerally . . . deemed procedurally premature."  *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).

---

[16] It is settled law in the Second Circuit that "as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of 'adjudicatory competence' under Article III." *Langan*, 897 F.3d at 93 (internal citation omitted).  "Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place." *Id.* at 95.  *See also, e.g.*, *Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 432 (S.D.N.Y. 2023) ("'[P]ersonal jurisdiction over [D]efendant as to putative out-of-state class claims would be best assessed at the class certification stage of the proceedings, not at the motion to dismiss stage.' *Hawkins v. Well Path, LLC*, No. 19-CV-8969, 2020 WL 4287447, at *6 (S.D.N.Y. July 27, 2020) (collecting cases).  Accordingly, the Court denies without prejudice Defendant's motion to dismiss for lack of personal jurisdiction the putative out-of-state class members' claims.").

> . . . Navient principally argues that Travis will be unable to "demonstrate
> commonality, predominance, or superiority," and will therefore be unable to certify
> a class pursuant to Federal Rule of Civil Procedure 23(a).[] Since it would be
> premature to decide this fact-specific argument at this juncture, Navient's motion
> to strike Travis' class allegations is denied. Navient may raise these arguments if
> Travis moves for class certification pursuant to Federal Rule of Civil Procedure 23.

*Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020). "Before discovery into the

class, it is impossible for the Court to determine how many states' laws are implicated in this action,

how many of those laws vary, and how many variances are material to the factors the Court will

consider in deciding whether to certify the class. Nor ha[ve] Defendant[s] yet established that the

standards of liability in relevant states are sufficiently different that they would raise

insurmountable case management issues or render class issues insufficiently predominant."

*Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 80 (E.D.N.Y. 2017). Accordingly, Defendants'

effort to strike Plaintiffs class allegations should be denied.

 Accordingly, Plaintiffs respectfully request that the Court deny Defendants' efforts to strike

Plaintiffs' class allegations and Minnesota and Washington, DC claims as procedurally improper.

## CONCLUSION

 For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants'

Motion in its entirety.

Date: November 17, 2025     Respectfully submitted,

            **WEITZ & LUXENBERG, PC**

            /s/ Chantal Khalil Levy

            Chantal Khalil Levy
            Aaron Freedman
            700 Broadway
            New York, NY 10003
            (212) 558-5500
            ckhalil@weitzlux.com
            afreedman@weitzlux.com

*Counsel for Plaintiffs and
the Classes*

21

## <u>WORD COUNT CERTIFICATION</u>

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1.  I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 7,202 words.

/s/ Chantal Khalil Levy

Chantal Khalil Levy