UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NEDA ANSARI, MALCOLM BROOKS, VY LE, ANNABELLE PULVER, USRA SALIM and DANA WHITTEN, on behalf of themselves and all others similarly situated,

Plaintiffs,

25-cv-4643 (PKC)

-against-

OPINION AND ORDER

JOE & THE JUICE NEW YORK LLC and JOE & THE JUICE US HOLDINGS, INC.,

Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

Defendants Joe & The Juice New York LLC and Joe & The Juice US Holdings, Inc. (collectively, "Joe & The Juice") operate a fast-food chain that markets its offerings as healthy, high-quality, and made from natural ingredients. Olive oil is a listed ingredient in all but one of defendants' juice products, with no other food oil cited. Plaintiffs allege that Joe & The Juice uses an oil blend that contains 95% canola oil and 5% olive oil. Plaintiffs assert that canola oil is cheaper, less-flavorful, and less-healthy than olive oil.

Plaintiffs are citizens of six states and bring state law claims on behalf of a putative class pursuant to the Class Action Fairness Act ("CAFA"). Defendants Joe & The Juice now move to dismiss all claims asserted against them in the Amended Complaint ("Compl't"). For reasons to be explained, defendants' motion to dismiss is granted as to (1) plaintiffs' N.Y. General Business Law ("GBL") claims (Counts Three and Four), except those of plaintiff Pulver arising from her New York-based transactions; (2) so much of plaintiffs' GBL section 349 claim

(Count Three) as seeks injunctive relief; and (3) the unjust enrichment claims (Count Six) of plaintiff Pulver arising from her New York-based transactions. The motion is otherwise denied.

BACKGROUND

Joe & The Juice is a fast-food chain with more than 65 locations in the United States. (ECF 27 — Compl't ¶ 1.) Its product offerings include juices, shakes, coffee, and sandwiches, and its marketing emphasizes a healthy lifestyle and natural ingredients. (Id. ¶¶ 2–3.)

Apart from one offering — "JOEs Green Mile" — defendants' menu lists olive oil as an ingredient in all juices sold. (Id. ¶¶ 35–37.) No other type of food oil is listed. (Id.) The Complaint describes olive oil as a nutritious product with health benefits and characterizes canola oil as highly processed and unhealthy. (Id. ¶¶ 8, 37–38, 40.) It describes olive oil as "a bit fruitier and slightly peppery" in flavor and canola oil as "relatively neutral" in flavor. (Id. ¶ 42.)

Plaintiffs assert that despite listing olive oil as a product ingredient, nearly all of defendants' juice offerings actually contain a canola oil blend, and no product contains pure olive oil that is undiluted by canola oil. (Id. ¶¶ 43–44.) Defendants allegedly use an oil blend that consists of 95% canola oil and 5% olive oil and intentionally do so as a cost-saving measure. (Id. ¶¶ 47–53 & n.6.) Plaintiffs cite the definition of "olive oil" adopted by the North American Olive Oil Association, which provides that an "olive oil" product must be extracted exclusively from olives and cannot be mixed with any other type of oil. (Id. ¶ 7.)

Plaintiffs assert that they had no way of knowing that defendants used a canola-oil blend at the time of purchase and reasonably relied upon defendants' representations that their

juice products contained olive oil. (Id. ¶¶ 46, 54–59.) Citing a December 23, 2024, article in an online publication called Daily Dot, plaintiffs state that "public reports recently revealed that Defendants' Products contain a canola-oil-blend, despite representing that they contain olive oil." (Id. ¶ 47 & n.6.) Plaintiffs assert that defendants knew and intended that customers would pay a premium price for olive-oil products, and that plaintiffs would not have paid a premium price, or even purchased the defendants' juices, had they known that the products used a canola-oil blend. (Id. ¶¶ 60–62.)

Plaintiffs are citizens of various states and assert that they bought defendants' juice products after reading the posted ingredients lists, with the expectation that the list was complete and accurate. (Id. ¶¶ 16–22.) Neda Ansari is a citizen of Washington State who bought defendants' "Green Tonic" product several times in California and Washington. (Id. ¶ 16.) Malcolm Brooks is a Pennsylvania citizen who bought defendants' juice products in Pennsylvania. (Id. ¶ 17.) Vy Lee is a California citizen who bought defendants' "Green Shield" product in California. (Id. ¶ 18.) Annabelle Pulver is a New York citizen who bought defendants' "AMG, Green Tonic, and Herb Tonic" products in New York and Florida. (Id. ¶ 19.) Usra Salim is an Illinois citizen who bought defendants' "Go Away Doc and Pick Me Up" products in Illinois multiple times. (Id. ¶ 20.) Dana Whitten is a Maryland citizen who bought defendants' "Go Away Doc" product in Maryland. (Id. ¶ 21.)

Count One is a claim for breach of express warranty under section 2-313 of the Uniform Commercial Code ("UCC") as codified in plaintiffs' states of citizenship. (Compl't ¶¶ 74–91.) Count Two is a claim under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, (Compl't ¶¶ 92–107), but it was later withdrawn. (ECF 29 at n.1.) Counts Three and Four are claims of deceptive practices and false advertising under GBL sections 349 and 350. (Compl't

¶¶ 108–28.) Count Five is pleaded in the alternative to Counts Three and Four and asserts claims under the consumer-protection statutes of plaintiffs' individual states. (Id. ¶¶ 129–38.) Count Six is also pleaded in the alternative and is a claim of unjust enrichment. (Id. ¶¶ 139–45.)

## DISCUSSION

### I. RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Michael Grecco Productions, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)). In reviewing a Rule 12(b)(6) motion, the Court assumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the non-moving party. Peretti v. Authentic Brands Group LLC, 33 F.4th 131, 137 (2d Cir. 2022).

## II. Plaintiffs Have Alleged Plausible Claims Against Joe & The Juice for Breach of Express Warranty (Count One)

Count One is a claim for breach of express warranty under section 2-313 of the UCC. No party urges that there are relevant differences in the texts of the relevant UCC provisions as codified in in the laws of eight states, including New York, and the District of Columbia at issue.

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). "It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty. . . ." N.Y. U.C.C. § 2-313(2). "To state a claim for breach of express warranty, 'a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.'" Brodie v. Green Spot Foods, LLC, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (Ramos, J.) (citing Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (Román, J)); see CBS Inc. v. Ziff–Davis Publ'g Co., 75 N.Y.2d 496, 502–04 (1990).

"If a claim for breach of an express warranty is premised on the assertion that a defendant's labeling is materially misleading, a plaintiff must also allege that the labeling 'would be likely to deceive or mislead a reasonable consumer.'" Levy v. Hu Prods. LLC, 23 cv. 1381 (AT), 2024 WL 897495, at *5 (S.D.N.Y. Mar. 1, 2024) (Torres, J.) (citing Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 165 (S.D.N.Y. 2021) (Seibel, J.)).

Plaintiffs allege that defendants' menus expressly warranted that their juice products contained only olive oil when these products instead contained a blend consisting of 95% canola oil. (Compl't ¶¶ 79–81.) They further claim that defendants' misrepresentations are "likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members." (Id. ¶ 59.) Plaintiffs also claim they reasonably relied on defendants' representations and suffered an injury, because they paid more than they would have had they known the truth. (Id. ¶¶ 58, 61.)

Because defendants never made an affirmative statement about the products, such as claiming they were "100% pure," defendants claim that plaintiffs fail to allege a breach of express warranty. (ECF 32 at 18.) To support their contention, defendants cite two cases from this Court. (Id. at 19.) Both are inapposite.

In Barreto v. Westbrae Natural, Inc., 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021), this Court held that a reasonable consumer would not assume that "Vanilla Soymilk," which includes a statement in its ingredient list that it has "Natural Vanilla Flavor With Other Natural Flavors," used exclusively natural vanilla to flavor it. Because the product contained natural vanilla plus another vanilla-flavored ingredient that was also natural, the statement was not false. But here, the only relevant statement by defendants was that the product contained "olive oil." Unlike in Barreto, no mention was made of "other" oils or ingredients.

Defendants also cite Kamara v. Pepperidge Farm, Inc., 570 F. Supp. 3d 69 (S.D.N.Y. 2021). But the store packaging in Kamara accurately disclosed that, in addition to butter, the product contained "vegetable oils (canola, sunflower and/or soybean)." 570 F. Supp. 3d at 75, 78–79. Unlike in Kamara, the ingredient list here discloses the use of olive oil — which makes up 5% of the oil content — but never discloses the use of canola oil — which

makes up 95% of the oil content. (Compl't ¶ 39; see Compl't. ¶¶ 35–36 ("Hydration Station" contains "Vita Coco Coconut Water, Lemon, Spinach, Ginger, Apple, Olive Oil, Ice"; "Green Shield" contains "Kale, Ginger, Cucumber, Spinach, Apple, Olive Oil, Ice," etc.)) Nor do defendants suggest that the ingredient listing was partial. At the motion to dismiss stage, subject to the pre-suit notice requirement discussed below, plaintiffs plausibly have stated a claim for breach of express warranty.

The Court now turns to defendants' assertions that the pre-suit notice of a claim for breach of express warranty was not adequate, timely or inclusive of the one plaintiff not mentioned by name in the body of the notice.

A. Plaintiffs Plausibly Have Alleged Their Pre-Suit Notice Was Adequate.

The express warranty provision of the UCC does not, in itself, contain a pre-suit notification requirement. But the Code does provide that acceptance of goods "does not impair any other remedy provided by [Article 2 of the UCC] for non-conformity." N.Y. U.C.C. § 2-607(2). Where the goods have been accepted, as plaintiffs did so here, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy . . . ." Id. § 2-607(3)(a).

Plaintiffs allege that they sent defendants notice of the claimed breach via certified mail on or about April 8, 2025, (Compl't ¶ 89), but do not annex the notice to their Complaint. In support of their motion to dismiss, defendants have submitted a copy of an April 1, 2025, letter from counsel for Ansari, Pulver, Le, Whitten, and Brooks to Joe & The Juice. (ECF 33-2.) Because the Complaint incorporates the letter by reference and plaintiffs do not dispute its authenticity, it is properly considered on this motion.

The April 2025 letter asserted that defendants breached sections 349 and 350 of the GBL by falsely claiming that their juice products used olive oil, when they "actual contained a harmful concoction made up of over 95% canola oil." (Id. at 3.) The letter stated that plaintiffs intended to seek damages under GBL on behalf of those who purchased juice from Joe & The Juice nationwide. (Id. at 4.) The letter did not reference a claim for breach of express warranty.

No form or magic words are required to notify a seller of a claim that the accepted goods are in breach of an obligation. See, e.g., Campbell v. Bradco Supply Co., 194 A.D.3d 143, 150 (2d Dep't 2021). Its substance "need only alert the prospective defendant that the transaction was troublesome." Maroney v. Woodstream Corp., 695 F. Supp. 3d 448, 468 (S.D.N.Y. 2023) (Karas, J.) (quotation marks and alterations omitted). Comment 4 of UCC section 2-607 states:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

N.Y. U.C.C. § 2-607, cmt. 4.

"While notice is a requirement under New York law for a breach of warranty claim, the sufficiency and timeliness of the notice is generally a question for the jury." Hubbard v. Gen. Motors Corp., No. 95 cv 4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (Schwartz, J.) (citations removed).

Defendants contend that the content of plaintiffs' pre-suit notice is deficient because it did not identify plaintiffs' particular transactions and only invoked the GBL without asserting a breach of an express warranty. Where a buyer has made multiple purchases from a seller, the breach notice must advise the seller of the specific transaction in dispute. See Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp., 2014 WL 4054240, at *9 (S.D.N.Y. Aug. 15, 2014) (Schofield, J.). But courts have generally afforded greater latitude to a consumer's breach notice, as compared to a commercial buyer. In Maroney, 695 F. Supp. 3d at 467–68, Judge Karas rejected defendant's argument that consumers who bought allegedly defective anti-rodent products were required to identify dates of purchase, dates of use, and the particular product type claimed to be defective. He concluded that "the notice required to preserve the right to sue for damages need only alert the prospective defendant that the transaction was troublesome." Id. (quotation marks and alterations omitted).

The Court concludes that plaintiffs' written notice was sufficient to satisfy section 2-607's notice of breach requirement. It alerted defendants to plaintiffs' assertion that the contents of their juice products were not as warranted. It is true that plaintiffs did not identify the dates and locations of their purchases, but plaintiffs assert that defendants have a company-wide practice of using a canola oil blend, not that any discrete and individual purchase was defective. Even though the notice did not explicitly state other possible sources of liability, the Court concludes at the motion to dismiss stage that the letter was sufficient to put the defendants on notice of a troublesome transaction and specifically that defendants had "advertised its Juices as containing olive oil, when it actually contained a harmful concoction made up of over 95% canola oil." (ECF 33-2 at 3.)

B. Plaintiffs Have Plausibly Alleged Their Pre-Suit Notice Was Timely.

Defendants also argue that the notice was not presented "within a reasonable time" after they discovered or should have discovered any breach.

Section 2-607(3)(a) of the UCC requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." See also MacNaughton v. Young Living Essential Oils, LC, 67 F.4th 89, 100 (2d Cir. 2023) ("In order to assert a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach." (quotation marks and alterations omitted)); Clemmons v. Upfield US Inc., 667 F. Supp. 3d 5, 21 (S.D.N.Y. 2023) ("A plaintiff must give pre-litigation notice because timely notice is a condition precedent to bringing an action for breach of warranty." (quotation marks omitted)).

First, defendants argue that the Complaint does not identify a date when plaintiffs first learned about the alleged use of canola oil. However, the Complaint states that "public reports recently revealed" defendants' purported use of canola oil and cites to an online article published on Daily Dot, with the date December 23, 2024. (Compl't ¶ 47 & n.6.) Drawing all reasonable inferences in favor of the non-movants, the Court reads this allegation to assert that one or more plaintiffs learned about the use of canola oil shortly after "public reports," which the Complaint alleges includes the Daily Dot piece published on or after December 23, 2024. (Id. ¶ 47 at n.6.)

Second, defendants argue that plaintiffs could have learned about the purported use of canola oil before the Daily Dot posting. The Daily Dot article, submitted by defendants, summarizes a social-media post in which a customer asked a Joe & The Juice employee to identify the type of olive oil the restaurant used, whereupon the employee "went to the back and

returned with a tin labeled as 95 percent canola oil and only 5 percent olive oil." (ECF 33-1.) Defendants claim that plaintiffs could have asked the same question at the time they made their juice purchases. But on a motion to dismiss, the Court will not consider whether plaintiffs would have had "no difficulty asking a staff member about the ingredients while making the purchase." (ECF 32 at 16.) Plaintiffs allege they learned about the purported use of canola oil only after the Daily Dot posting. (Compl't ¶¶ 47 at n.6, 105.) At the Rule 12(b)(6) stage, the Court will rely on the plaintiffs' representation.

Third, defendants argue that even if plaintiffs relied on the Daily Dot article of December 23, 2024, the Complaint fails to allege that it was reasonable to wait until April 8, 2025, to send a breach notice. "Whether a time for taking an action required by this act is reasonable depends on the nature, purpose, and circumstances of the action." N.Y. U.C.C. § 1-205(a). Relevant factors include whether the goods at issue were perishable, fluctuated rapidly in price, had defects readily apparent to an "inexpert observer," and whether the defendant was substantially prejudiced by a delayed notice. Sherkate Sahami Khass Rapol (Rapol Construction Co.) v. Henry R. Jahn & Son, Inc., 701 F.2d 1049, 1052 (2d Cir. 1983). "'A reasonable time' for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C. § 2-607 cmt. 4; see Maroney, 695 F. Supp. 3d at 466–67. "[D]etermining whether a particular time period was reasonable is generally a question for the jury." Simply Natural Foods LLC v. Polk Mach. Co., 2015 WL 5599152, at *4 (E.D.N.Y. Sept. 22, 2015); see Greacen v. Poehlman, 191 N.Y. 493, 498, 84 N.E. 390 (1908). "However, . . . when only one inference may be drawn as to the reasonableness of

the time in which defendant rejected the goods, it becomes a question of law." Tabor v. Logan, 114 A.D.2d 894, 894 (2d Dep't 1985).

Defendants argue that the roughly three-and-a-half-month period between the publication of the Daily Dot article and plaintiffs' breach notice was unreasonable. (ECF 32 at 16.) At the pleading stage, however, the Court declines to draw this inference against the non-movant. Plaintiffs' claims are directed toward food products that are quickly consumed and allegedly contain an undisclosed ingredient that would not be detectible to a reasonable consumer. The reasonableness of the delay is a question better left to a jury.

Defendants' motion to dismiss Count One based on whether the breach notice was sent within a reasonable time will be denied.

C. Plaintiffs Have Plausibly Alleged that the April 2025 Notice is Effective for Salim.

Defendants further argue that regardless of whether the individuals named in the April 2025 letter gave notice of potential claim, plaintiff Salim did not and his claim should be dismissed.

"The purpose of the pre-suit notice requirement is to give sellers the opportunity to resolve breaches short of litigation, but if sellers are not apprised of the trouble with a particular product purchased by a particular buyer, regardless of whether they are generally aware of problems with a particular product line, then they have no opportunity to resolve that buyer's problem before litigation ensues." Ulrich v. Probalance, Inc., No. 16 C 10488, 2017 WL 3581183, at *8 (N.D. Ill. Aug. 18, 2017). Under Illinois law, buyers "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of

warranty." Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 492 (Ill. 1996). However, "[d]irect notice is not required when [] the seller has actual knowledge of the defect of the particular product . . . ." Id. at 492. To allege actual knowledge, the plaintiff needs to allege more than "simply [the defendant] was generally aware of problems with the particular product line." Block v. Lifeway Foods, Inc., No. 17 C 1717, 2017 WL 3895565, at *6 (N.D. Ill. Sept. 6, 2017) (citing Anthony v. Country Life Mfg., LLC, 70 Fed.Appx. 379, 384 (7th Cir. 2003)).

Here, this Court has concluded that five of the six plaintiffs plausibly alleged adequate and timely notice in their April 2025 letter to defendants, allowing the breach of express warranty claim to proceed. The letter informed defendants that the five identified individuals were notifying them of the potential breach "individually and as representatives of all similarly situated individuals nationwide, who purchased a juice or signature juice product [] from Joe & The Juice [], between March 2022 and present, which [Joe & The Juice] deceptively advertised as containing olive oil instead of harmful canola oil." (ECF 33-2 at 2.)

The Court concludes that the notice was of sufficient breadth to encompass claims asserted by other named plaintiffs or even absent class members in a putative class action. The Court rejects the assertion by defendants that the failure to name Salim as one of the "similarly situated" dooms his status as a class representative under Rule 23, Fed. R. Civ. P. The letter placed defendants on notice that the persons affected were found "nationwide," i.e. not just those who made purchases in New York. (ECF 33-2 at 2.)

The Court will not dismiss the express warranty claim of Salim and need not address whether Salim is a proper class representative for those who purchased defendants' products in Illinois.

## III. Plaintiffs' New York General Business Law Claim (Counts Three & Four) Will Be Dismissed Except For the Claims of Plaintiff Pulver Stemming from New York Transactions.

Counts Three and Four of plaintiffs' complaint bring claims under sections 349 and 350 of New York's General Business Law ("GBL"). Section 349 of the GBL prohibits "[d]eceptive . . . acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in [the state of New York.]" It also gives a private right of action to any person who has been injured as a result of a violation of section 349. Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the state of New York.]" "The term 'false advertising' means advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect." GBL § 350-A. Claims under sections 349 and 350 do not need to meet the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P. Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

In Goshen v. Mutual Life Company of New York, 98 N.Y.2d 314 (2002), the New York Court of Appeals held that, for the purposes of sections 349 and 350, "the transaction in which the consumer is deceived must occur in New York." Id. at 324. After Goshen, the Second Circuit recognized a split of authority in New York case law as to whether the *transaction* must have occurred in New York (transaction-based test) or whether the victim must be *deceived* in New York, regardless of where the transaction took place (place-of-deception test). Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 122 (2d Cir. 2013). The Second Circuit, as a federal court applying New York law, thought it appropriate in this instance "to focus on the location of the transaction, and in particular the strength of New York's connection to the

allegedly deceptive transaction, rather than 'on the residency of the parties.'" Id. at 122 (citing Goshen, 98 N.Y.2d at 325).

The facts in this action are similar to the facts before the New York Court of Appeals in Goshen. In one of the two cases in the consolidated appeals, the plaintiffs included both New York and non-New York residents. Goshen, 98 N.Y. at 322. These plaintiffs were internet subscribers of businesses that allegedly developed their misleading marketing in New York. Id. at 322–23. The Court affirmed the dismissal of the non-New York persons and allowed the claim to proceed "for only the New York plaintiffs." Id. at 323–24 ("We conclude that the transaction in which the consumer is deceived must occur in New York.")

Like the unsuccessful plaintiffs in Goshen, the plaintiffs here allege that "the representations and omissions regarding the Products emanated out of its headquarters in New York . . . ." (Compl't ¶ 29.) But the fact that the deception merely emanated out of a New York-based headquarters is insufficient. This theory was explicitly rejected in Goshen. 98 N.Y. at 325 ("The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer . . . . Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York.")

The direct application of Goshen compels the dismissal of the GBL claims of any plaintiff who does not plausibly allege that the transaction — the purchase of defendants' juice that was induced by a deceptive menu description — occurred in New York.

The decision reached here is consistent with that recently reached by Judge Subramanian in Lanham v. MLB Advanced Media, L.P., where the Court dismissed GBL claims against a New York-based company brought by non-New York residents because they did not

allege that they engaged in any transaction or viewed any deceptive statements while present in New York. 2026 WL 2942683 *7 (S.D.N.Y. Sept. 30, 2026); see also Wheeler v. Topps Co., Inc., 652 F. Supp. 3d 426, 430–32 (S.D.N.Y. 2023) (Schofield, J.) (rejecting GBL claims by non-New York residents based on interactions with a website operated in New York); In re Fyre Festival Litigation, 399 F. Supp. 3d 203, 223–24 (S.D.N.Y. 2019) (rejecting GBL claims based upon deceptive statements emanating from New York by a New York business, but failing to allege that the plaintiffs' ticket purchases or other activities occurred in New York).

Defendants' motion to dismiss will be granted for plaintiffs who have not alleged that they entered into a deceptive transaction in New York.

Plaintiff Pulver alleges she bought defendants' juice products in New York and Florida in reliance on the allegedly deceptive statements on the menu concerning olive oil. Only Pulver's New York transactions will satisfy the requirements set forth in Goshen.

Here, Pulver alleges that, prior to purchasing the products, she read their ingredient lists. (Compl't ¶ 19.) She relied on the Joe & The Juice representation that the only oil the products contained was olive oil. (Id. ¶ 22.) And she paid more for the product than she would have otherwise. (Id. ¶ 24.) These allegations are sufficient to state a claim under sections 349 and 350 of the GBL.

In paragraph 110 of the Complaint, plaintiffs seek injunctive relief in the event any plaintiff prevails on a section 349 claim. Defendants assert that no plaintiff may pursue a claim for injunctive relief because, once deceived about the olive oil content, he or she cannot be deceived a second time. (ECF 32 at 29–30.) "Where there is no likelihood of future harm, there is no standing to seek an injunction . . . ." Berni v. Barilla S.p.A., 964 F.3d 141, 149 (2d Cir. 2020) ("[P]ast purchasers of a consumer product who claim to be deceived by that product's

packaging . . . have, at most, alleged a past harm.") Accordingly, the portion of the section 349 claim seeking injunctive relief will be dismissed.

Defendants also assert that Pulver's claim is barred by the statute of limitations. The limitations period applicable to claims under sections 349 and 350 is three years. Nachman v. Tesla, Inc., No. 24-2362, 2025 WL 1201996, at *2 (2d Cir. Apr. 25, 2025) (citing Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 210 (2001) and N.Y. C.P.L.R. 214(2)). But neither Rule 8(a) nor any substantive rule of law requires the pleader to allege the timeliness of her claim.[1] Rule 8(c) requires a party responding to a pleading to affirmatively state a defense of the statute of limitations. The statute of limitations may only be raised as a defense on a Rule 12(b)(6) motion if the defense appears on the face of the complaint. Staehr v. Hartford Financial. Services. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008). Pulver alleges in a conclusory manner that she purchased the product during the class period, (Compl't ¶ 19), which is alleged to be "during the relevant statute of limitations." (Id. ¶ 64.) As flimsy as her allegation is, it does not, on its face, support a defense that the GBL claims are untimely.

Defendants' motion to dismiss based upon the statute of limitations will be denied.

IV. Plaintiffs Adequately Allege Claims Against Joe & The Juice Brought Under the Laws of Minnesota and the District of Columbia.

Counts One and Five purport to state claims under the laws of Minnesota and the District of Columbia, even though no plaintiff is alleged to have bought any of defendants'

[1] Parker v. Alexander, 779 F. Supp. 3d 361 (S.D.N.Y. 2025) (Kaplan, J.), cited by defendants, was a case brought under state and local laws permitting revival of certain sexual abuse claims. The case did not purport to require plaintiffs in all types of cases to allege a factual basis for the timeliness of their claims.

products in those states or to be a citizen of those states. While no plaintiff has Article III standing to bring a claim under the laws of these two jurisdictions, Langan v. Johnson & Johnson Consumer Companies, Inc., 897 F.3d 88, 92–93 (2d Cir. 2018), held that a plaintiff may pursue claims on behalf of "out-of-state, nonparty class members with claims subject to different state laws," provided that plaintiff satisfies the predominance requirement of Rule 23(b)(3), Fed. R. Civ. P. Defendants challenge whether plaintiffs, who are not citizens of the state under whose law the claim arises, could adequately represent Minnesota or District of Columbia sub-classes as required by Rule 23(a)(4). (See ECF 35 at 15.)

But defendants' Rule 23 argument is more properly raised in connection with any motion for class certification and not at the Rule 12(b)(6) stage. The motion to dismiss claims brought under the laws of Minnesota and the District of Columbia will be denied for surviving claims.

V. The Motion to Dismiss the Multi-State Consumer Protection Claims (Count Five) Will Be Granted.

In Count Five of the Complaint, plaintiffs allege that defendants violated twelve consumer protection statutes from seven states and the District of Columbia. (Compl't ¶¶ 25–27.)

"Simply provid[ing] lists of state consumer protection statutes, without even listing the elements of these statutes, let alone explaining how their factual allegations establish valid claims for relief under them" is insufficient to state a claim. In re Aluminum Warehousing Antitrust Litig., No. 13-MD-2481 KBF, 2014 WL 4743425, at *1 (S.D.N.Y. 2014), aff'd, 833 F.3d 151 (2d Cir. 2016); see also Kandel v. Dr. Dennis Gross Skincare, LLC, 721 F. Supp. 3d

291, 307 (S.D.N.Y. 2024) (Ramos, J.) (holding that plaintiff "merely stat[ing] that [defendant] has violated consumer protection laws in each of the fifty states and the District of Columbia and list[ing] each jurisdiction's consumer protection statute . . . does not suffice to state a claim.")

Plaintiffs simply list twelve consumer protection statutes that defendants allegedly violated. (Compl't ¶ 130.) For example, plaintiffs allege a violation of "Maryland's Consumer Protection Act (Md. Com. Law § 13-301 *et seq*.)." (Id. ¶ 130(g).) The statute's definition of "[u]nfair or deceptive trade practices" is divided into fifteen parts. Md. Code Ann., Com. Law § 13-301. One part of the definition encompasses any "[v]iolation of a provision," and proceeds to include 55 different provisions that could possibly be violated. Id. Plaintiffs, by citing a dozen statutes with differing elements and requirements, have failed the basics of notice pleading by failing to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see In re Aluminum Warehousing Antitrust Litig., 2014 WL 4743425, at *1 ("This [pleading] deficiency is a significant problem here because there is considerable variation in the elements of the state consumer protection statutes under which plaintiffs seek relief.")

Therefore, defendants' motion to dismiss will be granted for claims brought under Count Five.

## VI. The Motion to Dismiss Pulver's Claim of Unjust Enrichment (Count Six) Will Be Granted.

Under Count Six, plaintiffs claim defendants were unjustly enriched by selling products that were falsely labeled. Defendants, relying exclusively on New York law,[2] argue that all claims of all plaintiffs for unjust enrichment are duplicative of other claims asserted. (ECF 32 at 26–27.)

Generally, an unjust enrichment claim lies where "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012). While "a claim for unjust enrichment may be pleaded in the alternative to other claims," see Barnet v. Drawbridge Special Opportunities Fund LP, No. 14-CV-1376 PKC, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014), an unjust enrichment claim is not available if "it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon, Inc., 18 N.Y.3d 777, 790 (N.Y. 2012). "If a 'valid and enforceable' contract governs the dispute, a party may not recover under unjust enrichment." Elsevier Inc. v. Dr. Evidence, LLC, No. 17-CV-5540 (KBF), 2018 WL 557906, at *2 (S.D.N.Y. Jan. 23, 2018) (citing Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield, 448 F.3d 573, 587 (2d Cir. 2006)).

In their unjust enrichment claim, plaintiffs do not include any new factual allegations that were not plead in previous parts of the complaint, except for stating "[d]efendants have thereby violated fundamental principles of justice, equity, and good

[2] Although defendants correctly point out that plaintiffs are silent as to which state's unjust enrichment law applies, (ECF 32 at n.10), the Court declines to adopt their conclusion that all of plaintiffs' unjust enrichment claims arise under New York law.

conscience," "[i]t is inequitable for Defendants to retain the benefits conferred by Plaintiffs and Class Members' overpayments," and seeking "the establishment of a constructive trust." (Compl't ¶¶ 142, 144–145.) These allegations do no more than recast defendants' conduct in moral terms and seek a different remedy. There is nothing here that does not simply duplicate a conventional contract or tort claim. See Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 484 (S.D.N.Y. 2014) (Román, J.) ("Certainly, if in New York courts the instant claim for unjust enrichment would be unavailable—as here, where Plaintiff simply restates elements of other claims—it must equally be unavailable in the Federal courts.") Courts in this District have dismissed unjust enrichment claims where, as is the case here, plaintiffs also state N.Y. GBL and breach of warranty claims. See, e.g., Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 568 (S.D.N.Y. 2016) (Marrero, J.); Mahoney v. Endo Health Sols., Inc., 2016 WL 3951185, at *11 (S.D.N.Y. 2016) (Cote, J.).

As a matter of New York law, the unjust enrichment claims of plaintiff Pulver that stem from her New York-based transactions are duplicative of her express warranty and GBL claims. Therefore, they are subsumed within those claims and will be dismissed. But as to the non-New York plaintiffs' claims and Pulver's claims arising outside of New York, defendants have not shown whether unjust enrichment claims from other states are foreclosed by duplicative state tort and contract claims. These claims will stand. Thus, defendants' motion to dismiss unjust enrichment claims will be granted only as to any plaintiff whose unjust enrichment claim arises under New York law.

CONCLUSION

Defendant's motion to dismiss is granted as to (1) plaintiffs' N.Y. GBL claims (Counts Three and Four), except those of plaintiff Pulver that arise from transactions within New York; (2) so much of plaintiffs' claim under section 349 (Count Three) that seeks injunctive relief; and (3) the claims of plaintiff Pulver for unjust enrichment (Count Six) that arise from transactions within New York. The motion is otherwise denied.

The Clerk is directed to terminate the motion at ECF 31.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 20, 2026